**Kenny Lee TARVER, Appellant
(Defendant below),**

v.

**STATE of Indiana, Appellee
(Plaintiff below).**

No. 385S109.

Supreme Court of Indiana.

Sept. 24, 1987.

Scott L. King, Appellate Division, Crown Point, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Kenny Lee Tarver was convicted by jury of Murder on May 23, 1984. He was sentenced to a term of thirty-five (35) years imprisonment. He directly appeals, claiming fundamental error by the trial court in permitting the State to introduce an inculpatory statement made by him after asserting his right to counsel.

The facts show on April 9, 1983, Tarver shot and killed his ex-wife Almada Tarver and shot and wounded her boyfriend, Levi Williams. Tarver then met his step-brother and told him that he thought he had shot his ex-wife. The two men went to the police station.

At the police station, Tarver informed an officer he had shot someone. The officer placed him in the booking area, advised him of his rights, and questioned him. When Detective Summers, who had been investigating the scene of the incident, returned to the police station, Tarver was again advised of his rights. Tarver acknowledged he understood his rights, but refused to sign the waiver form. He indicated he would talk about the incident. He admitted to firing into the car in which his ex-wife and Williams were sitting. Tarver stated he had shot his wife. He stated his mind "comes and goes" and that he needed help. He eventually became upset and refused to speak further until he had seen an attorney. However, he began to talk to the police on his own again, and stated, "I lost my cool and started cappin. (sic) My life's been messed with. I don't case what happens to me."

At trial, Tarver denied shooting the victim. The court sustained an objection by Tarver's trial counsel to any testimony regarding admissions by Tarver after requesting an attorney. Later, during the State's rebuttal case, Detective Summers testified concerning the inculpatory statement Tarver made after requesting an attorney. The statement was allowed, over

objection, as it was offered solely for the purpose of impeachment.

Tarver's only contention of error is that the trial court committed fundamental error by permitting the State to present evidence of his extra-judicial statement without showing the statement was voluntarily made and without a proper foundation to permit its introduction as a prior inconsistent statement. Tarver states it was improper to allow the statement into evidence because the statement was made after he unequivocally asserted his right to an attorney. Detective Summers testified the statement was made spontaneously and not as a response to any questions by himself or any other officer. However, after Tarver asked for an attorney, some conversations did continue.

The State asserts Tarver's claim has been waived because this question was not raised at trial nor in Tarver's Belated Motion to Correct Error. This assertion is supported by the record. The only contentions made by Tarver on this subject in his Belated Motion to Correct Error refer generally to all of his statements made to the police. The Belated Motion to Correct Error alleges Tarver was not properly advised of his constitutional rights against making such statements; that the Hammond Police, and specifically Detective Summers, induced Tarver to make the statements by their method of questioning; that the statements were not properly recorded and were so vague and uncertain that as a matter of law they were unworthy of truth or consideration. No mention was made of the grounds now raised concerning the statement made after Tarver's request for an attorney. Furthermore, no objections were made when the other statements were admitted into evidence. The only objection made was that the statement was made after Tarver indicated he wanted an attorney and therefore should be excluded.

A defendant may not state one reason for an objection at trial and rely on another on appeal. *Vasquez v. State* (1983), Ind., 449 N.E.2d 284, 286. There is no evidence in the record that the officers coerced Tarver nor is there any evidence that promises were made to him. Tarver does not argue he was coerced or placed under duress by the police. He argues only that he had mental problems when he made his statements and that therefore his statements could not be considered voluntary. Therefore, as Tarver's argument on appeal was not properly brought to the trial court's attention, Tarver has waived the issue. *Ferry v. State* (1983), Ind., 453 N.E.2d 207, 212; *Vasquez,* 449 N.E.2d at 286.

Tarver, however, urges us to address this issue as fundamental error. Fundamental error is that which, if not corrected, would deny a defendant a fundamental due process. *Roland v. State* (1986), Ind., 501 N.E.2d 1034, 1039. Only when the record clearly reveals blatant violations of basic and elementary principles, and the harm or potential for harm could not be denied, will we review an issue not properly raised and preserved. *Id.* The alleged error does not rise to this level.

The complained of statement was offered as rebuttal evidence solely for the purpose of impeachment. Rebuttal evidence is any competent evidence used to explain, contradict or disprove an adversary's proof. *Seltzer v. State* (1986), Ind., 489 N.E.2d 939, 942. In his statements to the police, Tarver admitted he had shot his wife. He admitted shooting into the automobile and admitted having a .357 pistol that he threw away when he left the scene. He stated he could not remember details and that his mind would "come and go." Tarver also stated to the examining psychiatrist that he did not remember details of the incident.

At trial, Tarver testified in his own behalf, giving an entirely different account of the incident from what he had previously given and different from that given by any other witness. He testified he put a pistol in his belt when he approached the automobile in which his ex-wife and Levi Williams were sitting. While talking to his ex-wife, he became suspicious that Williams and others were going to shoot him. Shots were then fired at him. Tarver indicated the shots were coming from behind him and from several different people. He tried to protect himself and leave the scene.

In the process of pulling his gun from his belt to protect himself, the hammer came back and the gun went off into the ground once. He then ran from the scene and threw the gun away. He thus denied shooting into the automobile the shots that killed his wife and injured Williams, inferring that the suspects for these shootings were apparently his wife's brother and Williams' brothers, acting through some conspiracy with Williams. Although he did not definitely say he knew any of these people had done the shooting, these were the only people in the area at the time.

The State's rebuttal was directed to the fact that before his testimony at trial, Tarver had at all times maintained he could not remember any details of the incident. Then, at trial, he gave an entirely different and detailed account of the incident. After the defense rested the State called Detective Summers to present Tarver's extra-judicial statement. The statement was not admitted into evidence during the State's case-in-chief because it was not established whether the statement was made in response to a question by the police after Tarver had asserted his request for an attorney. However, the statement was put into evidence during rebuttal to impeach Tarver's testimony that he did not shoot into the automobile in which his wife and Williams were sitting.

It is proper to admit a defendant's statement on rebuttal that was inadmissible in the prosecution's case in chief where the legal standards of trustworthiness are satisfied and the statement is used only for impeachment. *Barker v. State* (1982), Ind., 440 N.E.2d 664, 668. As the recitation of the evidence reveals, there is no showing that Tarver was in any way induced to make the statement in question. Although conversation continued after Tarver asked for an attorney, Detective Summers clearly stated, and there is no evidence to the contrary, that Tarver, on his own and without interrogation or prompting, stated: "I lost my cool and started cappin. My life's been messed with. I don't case what happens to me." There was no explanation or definition of "cappin." This testimony is merely cumulative of Tarver's other more incriminating statements which were admitted into evidence without objection. The evidence revealed Tarver's statement to his brother that he had shot someone. Also admitted into evidence were Tarver's statements to the police that he had shot his wife, that he had shot into the automobile several times, and that the reason was an argument over money with his ex-wife. The testimony of two eyewitnesses, Williams and the deceased's brother, showed that Tarver approached the car, pulled his pistol, and shot into the vehicle at least four times. Finding the legal standards of trustworthiness satisfied and finding the statement was used only for impeachment, we fail to see error in the admission of this testimony.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.