Charles KINGERY, Defendant–Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 49S00–9403–CR–226.

Supreme Court of Indiana.

Dec. 22, 1995.

Rehearing Denied May 22, 1996.

Monica Foster, Rhonda Long–Sharp, Hammerle Foster & Long–Sharp, Indianapolis, for Appellant.

Pamela Carter, Attorney General, Joseph F. Pieters, Deputy Attorney General, Office of the Attorney General, Indianapolis, for Appellee.

## ON DIRECT APPEAL

SELBY, Justice.

After a jury trial, Charles Kingery was convicted of murder and Class A robbery. The trial court sentenced Kingery to fifty-five years for murder and fifteen years for Class B robbery, to be served consecutively. He now brings this direct appeal. We affirm the murder conviction, the murder sentence, and Kingery's conviction on the lesser included offense of Class C robbery. However, because the trial court improperly sentenced Kingery for Class B robbery, we vacate the Class B robbery sentence and remand for a new sentencing on the Class C robbery conviction.

On direct appeal, Kingery raises several issues, which we restate as follows:

I. Whether there was evidence sufficient to support the convictions of murder and robbery.

II. Whether Kingery was denied due process when the trial court instructed the jury that its sole duty was to determine Kingery's guilt or innocence.

III. Whether Kingery was denied due process when the prosecutor referred to Kingery's criminal history.

IV. Whether Kingery's sentence for Class B robbery must be vacated because the jury was not instructed on that offense.

V. Whether Kingery's murder sentence must be vacated because the court allegedly considered invalid aggravating circumstances, failed to consider relevant mitigating evidence, and failed to articulate any balancing process.

### FACTS

Late in the afternoon of April 1, 1991, the victim, George Wildrick, arrived at Van's Tavern, an establishment which Wildrick frequently patronized. Van's Tavern was hosting a pool tournament, and about 7:00 p.m., Charles Kingery and a friend, John Smith, arrived to compete in that tournament. George Wildrick spent several hours in Van's, displaying large amounts of cash, consuming several drinks, and announcing his plan to visit later another tavern, the Goldfinger Lounge. Witnesses who spoke with George Wildrick as he left Van's Tavern at closing, between 2:30 and 3:00 a.m., testified that Wildrick again stated his plan to have another drink at the Goldfinger Lounge, and was looking for someone to join him there.

Kingery and Smith played pool at Van's Tavern until approximately 1:00 a.m. Smith then left for home. Kingery told Smith that he intended to head home shortly. However, Melissa Haynes, the woman with whom Kingery lived, testified that Kingery did not arrive home until more than two hours later, a little after 3:00 a.m.

State's witness Heidi Marter was awake that morning around 3:00 a.m. when she heard, outside her home near the Goldfinger Lounge, three gunshots. Peering out her window, she saw a person, motionless, sitting upright in a large pickup truck parked near the lounge. A man, standing outside the truck, reached inside, opened the driver's side door, lifted the person from inside the truck and placed that motionless individual on the ground. Marter then saw the man look under the truck's seats and wipe down the truck's interior, particularly the passenger area and the steering wheel. He ran his hands up and down the length of the motionless individual's body. Using a rag, the man rolled up the truck's window, left the rag in the window, shut the door and walked toward the Goldfinger Lounge.

Marter left her home and drove over to the scene. She found the victim, George Wildrick, laying on his left side in a pool of blood. She quickly returned home to call the police. After notifying the police, she again looked out her window, and saw that the man whom she had seen earlier had returned. He pulled up next to the body in a small, light-colored pickup truck, got out of the truck, turned the lights of the victim's truck off, wiped down the inside of the victim's truck a second time, returned to his truck, and drove away.

Witness Steven Ross was driving toward the Goldfinger Lounge around 3:30 a.m. when he saw a small white truck speeding in the opposite direction. Finding police at the lounge when he arrived, and discovering that they were looking for a white truck, he told them that he had just seen a white truck speeding away from the Goldfinger.

Arriving at the crime scene at approximately 4:30 that morning, a deputy coroner recovered several items from Wildrick's body, including a pair of sunglasses. These sunglasses were later found to contain a bloody fingerprint which the State demonstrated belonged to Kingery. At the end of an extended investigation, Kingery was charged with murder, felony murder, and robbery. After a jury trial, Kingery was convicted of murder and Class A robbery, but sentenced as if he had been convicted of murder and Class B robbery.

## DISCUSSION

### I. Sufficiency of the Evidence

■■■ Kingery first argues that the evidence presented at his trial was legally insufficient to support a guilty verdict on either the murder or the robbery charge. When, on appeal, sufficiency of the evidence is challenged, this Court will neither reweigh the evidence nor review the credibility of witnesses. We will "look to the evidence most favorable to verdict together with all reasonable inferences therefrom" and then "determine whether there is substantial evidence of probative value from which the trier of fact might reasonably have found the defendant guilty beyond a reasonable doubt." *Landress v. State* (1992), Ind., 600 N.E.2d 938, 940. As long as there exists sufficient evidence of each material element of the charge, we will sustain a judgment. *Isom v. State* (1992), Ind.App., 589 N.E.2d 245, *trans. den.*

■■■ To convict Kingery of murder, the State was required to show that he (1) knowingly or intentionally (2) kill[ed] (3) another human being. Circumstantial evidence alone will support a verdict of murder. *Utley v. State* (1992), Ind., 589 N.E.2d 232, 241, *cert. denied*, 506 U.S. 1058, 113 S.Ct. 991, 122 L.Ed.2d 142. It is within the province of the jury to determine facts from evidence presented to it, and judge the credibility of those facts. Furthermore, it is the duty of the jury to draw reasonable inferences from facts established either directly or through circumstantial evidence. *Metzler v. State* (1989), Ind., 540 N.E.2d 606, 609.

■■■ Sufficient evidence was presented at Kingery's trial to permit the jury to reach a guilty verdict on the charge of murder. Kingery was in the same tavern as Wildrick on the night of Wildrick's death; thus, Kingery was in a place where he had an opportunity to see the amount of money which Wildrick had in his wallet. (R. at 401–03, 495, 501). Kingery was in a position to overhear Wildrick announce his intention to travel to another tavern. Wildrick was killed at that tavern. A witness heard shots, saw a man remove Wildrick's body from Wildrick's truck and flee from the scene. After examining Wildrick's body and returning home to

call police, that witness saw the same man return to the crime scene in a truck substantially similar to Kingery's truck. The witness noticed that the tailgate was missing or down. Kingery's tailgate was missing. The witness saw the individual who returned to Wildrick's truck wipe down the interior of the truck, as if to destroy any fingerprints in the truck. The witness testified that the individual ran his hands quickly over Wildrick's body, as if searching it.

Additionally, witnesses speeding to the scene in response to the police call noticed a truck substantially similar to Kingery's speeding away from the crime scene. The State presented evidence demonstrating that Kingery owned a gun capable of firing the rounds which killed Wildrick.

Kingery particularly challenges, as insufficient to support his conviction, evidence supporting the State's contention that a thumbprint found on the victim's sunglasses belonged to Kingery. Three forensic experts concluded that the thumbprint was Kingery's. The jury was presented with the fact that the fingerprint experts' first tests were inconclusive, and that additional testing procedures permitted the experts to reach a positive identification. We find that the jury had ample evidence presented to it through which it could infer that the print was that of Kingery.

The State presented ample evidence through which the jury could properly infer that all the requisite elements of murder exist. Because the evidence is sufficient to support the jury's conclusion that Kingery murdered Wildrick, Kingery's conviction on Count I, murder, is affirmed.

Kingery also challenges the sufficiency of the evidence supporting his robbery conviction. Again, the State presented evidence that Wildrick had been robbed, and that Kingery committed the robbery. As mentioned above, Kingery had been in a position to know that Wildrick had a substantial amount of cash on his person. A witness saw the individual whom the jury later determined to be Kingery move his hands up and down Wildrick's body as if searching it, and Wildrick's billfold, which contained over

$2000.00, was never recovered. The State presented evidence sufficient to permit the jury to reach a guilty verdict on the robbery charge.

## II. Jury Instruction No. 12

■ Kingery contends that he was denied due process and his constitutional right to a jury verdict because the trial court gave the following instruction:

> Defendant has the presumption of innocence. If the evidence presented has not convinced you beyond a reasonable doubt of the defendant's guilt, you should find the defendant not guilty.
>
> However, if you find that the state has proven beyond a reasonable doubt the material allegations of the charges against the defendant, then you should find the defendant guilty. Proper verdict forms will be furnished for your use; Furthermore, *your sole responsibility is to determine innocence or guilt herein,* and should there be a finding of guilt, sentencing responsibility is that of the trial judge alone. (Emphasis added.)

(R. at 138).

Kingery did not object to this instruction at trial. He now contends that the phrase "your sole responsibility is to determine innocence or guilt herein" improperly deprived him of his right to a jury verdict, because the phrase relieves the State of having to prove, beyond a reasonable doubt, each element of the offense. He argues that the phrase permits the jury to substitute a preponderance standard for the beyond-a-reasonable-doubt standard, and permits the jury to return a guilty verdict upon a finding of guilt merely by a preponderance of the evidence. We disagree.

"Instructions ... are never construed standing alone; they are to be read together and considered as a whole." *Daniel v. State* (1991), Ind., 582 N.E.2d 364, 373. In *Daniel,* we considered a challenge to a jury instruction nearly identical to Kingery's instruction. Defendant Daniel objected to an instruction which directed the jury, in salient part, "that they 'must determine the guilt or innocence of the defendant' and that the jury's 'sole responsibility' is to determine guilt or inno-

cence herein." We upheld Daniel's conviction, after examining the *Daniel* instructions in their entirety, finding that the instructions read in their entirety required the jury to find guilt beyond a reasonable doubt, and did not constitute reversible error.

The challenged language in this instruction is troublesome. However, unlike the defendant in *Daniel,* Kingery did not object in a timely manner to the instruction and thus failed to preserve any error for appellate review.

## III. References to Criminal History

Kingery suggests that witnesses, during trial, made statements which jurors may have interpreted to mean that Kingery had a criminal history and that Kingery was a suspect in other offenses at the time of his trial. The prosecutor elicited some of these references by asking witnesses questions about the procedure used to identify fingerprints as Kingery's. The responses of some of the witnesses included statements which referred to fingerprint cards on file for Kingery which pre-dated the Wildrick murder investigation. Kingery claims that these statements constitute fundamental error by improperly introducing evidence of past crimes. We disagree.

■ Initially, the subject of fingerprint cards was raised in response to Kingery's counsel's questions of Kingery's witness. Kingery's witness first raised the inference that fingerprint cards for Kingery pre-dated the Wildrick murder investigation. By eliciting the evidence which he now challenges, Kingery invited the very error he now claims is fundamental. A party may not invite error, then later argue that the error supports reversal, because error invited by the complaining party is not reversible error. *Berry v. State* (1991), Ind.App., 574 N.E.2d 960, 963, *reh. denied, trans. denied, citing Amburn v. State* (1990), Ind.App., 550 N.E.2d 762, 764. Invited errors are not subject to appellate review. *Heiser v. State* (1992), Ind. App., 596 N.E.2d 965, 966, *reh. denied.* This type of invited error is not fundamental error.

■ Kingery also objects to comments made by fingerprint experts Robert Worland

and Michael Kestler elicited upon questioning by the State. Kingery did not object to this testimony at trial. Because the error was not preserved for appeal, we cannot now consider the claim of error unless the comments rise to the level of fundamental error. Because Kingery first invited comments about pre-existing fingerprint evidence, the subsequent fingerprint card evidence was cumulative of Kingery's evidence of prior fingerprints. Cumulative evidence, offered for a valid purpose, does not constitute fundamental error. *Tarver v. State* (1987), Ind., 513 N.E.2d 176. The evidence offered here, although cumulative, was offered to help the jury understand the procedure which fingerprint experts used to identify Kingery's fingerprint on Wildrick's sunglasses. Evidence of these pre-existing fingerprint cards did not constitute fundamental error sufficient to support Kingery's due process challenge on appeal.

### IV. Class B Robbery Sentence

Kingery next challenges his sentence for Class B robbery, arguing that because Class B robbery is not a lesser included offense of Class A robbery, and because the jury was never instructed on Class B robbery, his Class B sentence must be vacated.

There are three felony classes of robbery:

A person who knowingly or intentionally takes property from another person or from the presence of another person:

(1) by using or threatening the use of force on any person; or

(2) by putting any person in fear;

commits robbery, a Class C felony. However, the offense is a Class B felony if it is committed while armed with a deadly weapon or results in bodily injury to any person other than a defendant, and a Class A felony if it results in serious bodily injury to any person other than the defendant.

I.C. § 35–42–5–1 (1986).

An analysis of this statute reveals that, while Class C robbery is a lesser included offense of both Class A robbery and Class B robbery, Class B robbery is not necessarily a lesser included offense of Class A robbery.

Specifically, the armed-with-a-deadly-weapon Class B offense is not a lesser included offense of Class A robbery.

The State's Information in Count II charged Kingery with committing murder by inflicting gunshot wounds on the victim, and in Count III with committing robbery resulting in serious bodily injury to the victim. Thus, the State charged Kingery with committing both Class A robbery and Class B robbery, and, by virtue of its lesser-included status, Class C robbery.

The jury, however, never received an instruction asking them to find the elements of Class B robbery. Rather, the robbery instruction invited verdicts only on Class A and Class C robbery. The jury was instructed so:

#### Robbery

A person who knowingly or intentionally takes property from another person or from the presence of another person:

1) by using or threatening the use of force on any person; or

2) by putting any person in fear;

commits robbery. The offense is a Class A felony if it results in serious bodily injury to any person other than a defendant.

The elements of this offense are that the defendant must:

1. knowingly or intentionally

2. take property

3. from another or from the presence of another

4. by force, or threat of force, or by putting the person in fear

5. resulting in serious bodily injury to any person other than a defendant.

(R. at 105).

This jury instruction did not however, advise the jury that the defendant could be convicted of Class B robbery. The jury returned a verdict on the Class A robbery charge.

■ After reviewing the verdict, the trial court correctly reasoned that it could not sentence Kingery on both the murder count and the Class A robbery count. Where a

single act, in this case the shooting of Wildrick, forms the basis both for the upgrade, from Class C to Class A, of the robbery conviction and also the *act* element of the murder charge, a defendant cannot be twice sentenced for committing this single act. To do so would violate the prohibition against double jeopardy. *See, e.g., Mitchell v. State* (1989), Ind., 541 N.E.2d 265, 270; *Flowers v. State* (1985), Ind., 481 N.E.2d 100, 106; *Malott v. State* (1985), Ind., 485 N.E.2d 879.

■ Although the trial court correctly reasoned that a Class A robbery sentence was improper, the trial court was incorrect when it concluded that a Class B sentence was proper. The trial court stated:

I believe that Supreme Court of the State of Indiana has told the trial courts that it may sentence for a Robbery while Armed, but, again, being a single victim, it may not—it must take the A portion out of that Robbery, that is, the serious bodily injury of the gunshot wounds which caused the death of George Wildrick, and leave in the deadly weapon, that is, the handgun, which reduces that Robbery as a Class A felony to a Class B felony.

The trial court then sentenced Kingery to fifteen years on the Class B robbery.

■ Class B robbery requires proof of the use of a deadly weapon or proof of bodily injury. As discussed above, the prohibition against double jeopardy prevents Kingery from being sentenced twice for a single act, here shooting, which inflicted bodily injury; thus, he could only be sentenced on the use-of-a-deadly weapon prong of Class B robbery. The robbery instructions contain no request that the jury find that Kingery used a deadly weapon. The jury, therefore, was not instructed on the Class B charge; the Class B charge is not necessarily a lesser included offense of the Class A offense upon which the jury was instructed. The Class B requisite element, committing robbery while armed with a deadly weapon, is absent from the Class A/Class C instruction given to the jury. A person cannot be sentenced for a crime for which that person has not been convicted. *Evans v. State* (1991), Ind., 571 N.E.2d 1231, 1235; *Abdul–Wadood v. State* (1988), Ind., 521 N.E.2d 1299, 1300; *Smith v.* *State* (1984), Ind., 459 N.E.2d 355, 357; *Jarrett v. State* (1991), Ind.App., 580 N.E.2d 245, 252. Because Kingery was not convicted of the Class B robbery offense, we vacate Kingery's sentence for Class B robbery and remand for a new sentencing hearing on his Class C robbery conviction.

## V. Sentencing Considerations

Kingery next contends that his sentences must be vacated because the trial judge considered invalid aggravating circumstances, failed to consider relevant mitigating evidence, and failed to articulate any balancing process during the sentencing hearing. Because we have vacated his sentence for robbery, we will examine the trial court's consideration of aggravators and mitigators as to the murder sentence only. Kingery received an enhanced fifty-five year sentence on his murder conviction.

■■ A trial court may increase or decrease a sentence beyond the statutory presumptive sentence depending on the aggravating or mitigating circumstances present. *Fugate v. State* (1993), Ind., 608 N.E.2d 1370. A single valid aggravator is sufficient to sustain an enhanced sentence. *Jones v. State* (1992), Ind., 600 N.E.2d 544.

At Kingery's sentencing, the trial court identified these aggravators: uncharged misconduct, specifically other robberies (R. at 1156–57); Kingery's proclivity to commit future crimes (R. at 1153); and that Kingery killed to avoid identification and capture. Additionally, the trial court found as aggravating Kingery's need for rehabilitative treatment, that Kingery committed robbery and murder while lying in wait, and that Kingery engaged in post-act premeditation when Kingery told an investigating detective that he did not own or believe in guns. (R. at 1155–56). The only mitigator the judge recognized was that Kingery had no other felony convictions. (R. at 1151). Because the existence of a single aggravator is sufficient to support the decision to enhance a sentence, we need not review each aggravator that Kingery challenges. *Fugate, supra,* 608 N.E.2d 1370. Rather, we review two

aggravators sufficient to support the enhanced sentence.

Kingery challenges the trial court's decision to find Kingery's lying in wait as an aggravator. The trial court identified the following as aggravating:

It is an aggravating circumstance that there was either a lying in wait at the parking lot, and remember when first the witness from across the street viewed that parking lot, there wasn't any other vehicle in that parking lot which is a lying-in-wait type situation. If you follow a guy into a parking lot and you're going to rob him, it is extremely unlikely to me, but what do I know, I haven't robbed anybody, that you would drive around to the back of the parking lot, hide your vehicle and then run around. So it seems to me that we're in a lying in wait situation, although there may have been a following.

■■■■ Lying in wait is defined as "watching, waiting, and concealment from the person killed with the intent to kill or inflict bodily injury upon that person." *Thacker v. State* (1990), 556 N.E.2d 1315, 1324, citing *Davis v. State* (1985), Ind., 477 N.E.2d 889, cert. denied 474 U.S. 1014, 106 S.Ct. 546, 88 L.Ed.2d 475. The record contains ample evidence supporting the trial court's conclusion that Kingery, after learning of Wildrick's plan to visit the Goldfinger Lounge, and learning that Wildrick had substantial cash on his person, traveled to Goldfinger Lounge himself, parked his truck out of sight, and waited for Wildrick to arrive. The trial court could have properly inferred from facts in evidence that Kingery's vehicle was hidden, and that Kingery laid in wait for Wildrick. The trial court has discretion to find that the manner in which a crime was committed is an aggravating circumstance sufficient to increase the sentence beyond the statutory presumptive sentence. *Shanholt v. State* (1983), Ind.App., 448 N.E.2d 308. The trial court had authority to infer from the facts before it that Kingery laid in wait, and to find this factor aggravating. This aggravator alone is sufficient to support Kingery's enhanced murder sentence. *Jones v. State* (1992), 600 N.E.2d 544. The trial court prop-

erly concluded that Kingery's sentence should be enhanced because he laid in wait.

■■■■ Kingery also challenges the trial court's determination that he engaged in "post-act premeditation," and the trial court's conclusion that this is an aggravating factor. On April 6, 1991, five days after Wildrick's murder, Charles Kingery reported to the police that his car had been broken into at a softball complex, and his registered firearm had been stolen from the car. Before his subsequent arrest, Kingery purchased and properly registered another firearm.

A witness for the State, Detective Green, testified that a few days after the murder, prior to Kingery's report to police that his gun had been stolen, he met with Kingery. Green, commenting on this meeting in his pre-trial deposition, testified that Kingery reported only that he didn't have a gun. At trial, Detective Green expanded his testimony, stating that Kingery told him that he didn't own a gun because he didn't believe in guns. When asked about the discrepancy between his deposition and trial testimony, Green stated that he remembered Kingery making the statement about not believing in guns, but that Green "probabl[y] didn't tell [defense counsel]" during the deposition.

The trial court found Kingery's alleged statements to Green sufficient to support an aggravator. The trial court stated:

I believe, Mr. Kingery, that the telling to Detective Green sometime in April, being the 2nd or 3rd or 4th, that "I don't believe—I don't carry guns because I don't like guns," immediately followed by that Saturday telling Deputy Sheriff VanCleave that "my gun was stolen," I may not be able to draw the inference that I'm drawing, but I'm drawing the inference that that is post-act premeditation and I realize the anomaly of that and I'm sure that whoever you've hired to take this appeal will point out to the Supreme Court of the State of Indiana that I'm not allowed to do that, but I just did it and I'm helping you and your counsel make a record because I think from the evidence that I heard that that, quote, burglary of your vehicle and losing of a gun that you told Detective Green you didn't have, didn't own, is like

fleeing used to be. Fleeing used to be not necessarily evidence of guilt. By instruction, it was evidence of the consciousness of guilt, and I'm drawing that conclusion. So I've helped make your record because I think that's aggravating.

The trial court is explaining that Kingery engaged in post-act premeditation because Kingery was attempting to conceal his ownership of a particular gun. The trial court's finding of this aggravating circumstance is based on Detective Green's testimony at trial, testimony which the court could clearly find compelling. Further, the trial court could reasonably infer that Kingery was attempting to conceal his ownership of the particular weapon used in this crime. Kingery makes much of the fact that he purchased and registered a new weapon after reporting his weapon stolen, arguing that this fact demonstrates that he did not attempt to conceal his gun ownership. We think, however, that the trial court could properly infer that Kingery was engaged in "post-act premeditation" in attempting to hide his ownership of the gun used in Wildrick's robbery and murder.

 Kingery also argues that the trial judge failed to consider relevant mitigators when reaching a sentencing decision. However, the trial court, when issuing its sentence, identified the three witnesses who presented mitigating testimony, and determined that the testimony was of little weight. Additionally the trial court considered and weighed Kingery's character and the fact that he had no prior felony convictions. The trial court was not required to believe Kingery's mitigating evidence. *Underwood v. State* (1989), Ind., 535 N.E.2d 507, 522, *cert. denied*, 493 U.S. 900, 110 S.Ct. 257, 107 L.Ed.2d 206 *reh. denied*, 493 U.S. 985, 110 S.Ct. 524, 107 L.Ed.2d 524. It is the decision of the trial court to decide what weight mitigating factors are to be given. *Gilley v. State* (1989), Ind., 535 N.E.2d 130.

Because the trial court identified at least two aggravators sufficient to support the enhanced murder sentence, the trial court found that the mitigating factors in this case carried little weight, and that the aggravating circumstances outweighed the mitigating

circumstances, we affirm the trial court's decision to impose a fifty-five year murder sentence.

### Consecutive Sentences

The trial court sentenced Kingery to consecutive sentences for murder and robbery. Because we have vacated the Class B robbery sentence, with instructions to remand for a new sentence, we need not at this time address the propriety of the consecutive sentence.

### Conclusion

For the foregoing reasons, Kingery's conviction and sentence for murder is affirmed. Kingery's conviction for Class C robbery, as a lesser included offense of Class A robbery, is affirmed. Because the trial judge improperly sentenced Kingery for Class B robbery, we vacate and remand for a new sentencing on the Class C robbery conviction.

SHEPARD, C.J., and DEBRULER, DICKSON and SULLIVAN, JJ., concur.