**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Jul 23 2014, 6:45 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MATTHEW J. MCGOVERN**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SHANNON GOODMAN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 22A01-1401-CR-5 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE FLOYD SUPERIOR COURT
The Honorable Susan L. Orth, Judge
Cause No. 22D01-1208-FA-1778

**July 23, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Appellant-defendant Shannon Goodman appeals the fifteen-year sentence that was imposed following her guilty plea to Burglary Resulting in Bodily Injury,[1] a class A felony. Although Goodman claims that she did not knowingly and voluntarily waive her right to appeal her sentence because those terms were not expressly set forth in the written plea agreement, we conclude that the terms in the plea agreement stating that she would not appeal, along with the colloquy between Goodman, her counsel, and the trial court at the guilty plea and sentencing hearings, support the conclusion that Goodman waived her right to appeal the sentence.

Waiver notwithstanding, we also find that the sentence was not inappropriate when considering the nature of the offense and Goodman's character. Thus, we affirm the judgment of the trial court.

FACTS

On July 25, 2012, Goodman and her husband, William Vest, drove to ninety-two-year-old Richard Manka's house in Lanesville. Even though Goodman knew that Vest was planning to burglarize Manka's residence and steal his property, she agreed to drive him there.

After letting Vest out of her vehicle near Manka's house, Goodman drove the car "down the road a little ways and parked . . . to wait for [Vest] to return." Tr. p. 11. Approximately forty minutes later, Vest returned to the vehicle empty-handed and remarked that the "old f'er" was home. Id. Although Vest had taken some coins and a

---

[1] Ind. Code § 35-43-2-1.

shotgun from Manka, he told Goodman that he left the property behind because the coin bag had broken.

Later that same day, Goodman and Vest went to Rhonda Crone's house. At some point, they decided to return to Manka's and recover the property they had taken. When they arrived, Goodman and Crone took the property and cashed in the change at a local grocery store. Vest later told Goodman that he had hit Manka and stated that Manka had requested his oxygen tank while he was lying on the floor. As a result of being beaten in the head and neck during the burglary, Manka continues to suffer from short-term memory loss and severe pain.

Following the incident, the State charged Goodman with burglary resulting in bodily injury, a class A felony. Thereafter, Goodman entered into a plea agreement that capped the executed portion of her sentence at twenty years. However, the remainder of the sentence was within the trial court's discretion.

Goodman's plea agreement contained a provision stating that the "DEFENDANT WAIVES RIGHT TO APPEAL AND POST CONVICTION RELIEF." Appellant's App. p. 51. At the guilty plea hearing, Goodman's counsel informed the trial court that "to the extent permissible, [Goodman] would waive her right to appeal the sentence imposed." Tr. p. 5. The trial court asked Goodman if she "under[stood] what we're talking about here," to which Goodman responded, "Yes, Ma'am." Id. The trial court then inquired, "What's your understanding about the sentence?" Id. at 5. Goodman

responded that "whatever you decide my sentence is is [sic] what it's gonna be and I can't try to change that later." Id.

At the sentencing hearing that commenced approximately one month later, Goodman's counsel again confirmed that it was his client's intent to waive the right to appeal the sentence, stating "[T]hat was a term of our, uh, plea agreement, that we would waive, uh, appeal of sentence as well as, uh, the judgment of conviction." Id. at 25 (emphasis added).

In imposing the sentence, the trial court identified as aggravating factors Manka's age and the serious and lasting injuries that were inflicted upon him. The trial court noted that Manka "should not have to endure . . . both psychological and physical" injuries in his twilight years. Tr. p. 52-53. The trial court noted Goodman's educational background, her minimal criminal history, the fact that she had paid child support, her employment and earning potential, and the fact that incarceration would be a hardship to her children as mitigating circumstances.

Concluding that the mitigating factors outweighed the aggravating circumstances, the trial court sentenced Goodman to twenty years of incarceration with five years suspended to probation, thus resulting in a fifteen-year executed sentence. Goodman now claims that she did not knowingly waive her right to appeal the sentence and challenges the propriety of the sentence that was imposed.

4

DISCUSSION AND DECISION

I.  Appeal of Sentence

In addressing Goodman's contention that she did not knowingly waive her right to appeal her sentence, we initially observe that while an individual who pleads guilty is generally not allowed to challenge his or her conviction on direct appeal, he or she is typically entitled to contest the merits of his sentence when the trial court has exercised discretion at sentencing.  Holsclaw v. State, 907 N.E.2d 1086, 1087 (Ind. Ct. App. 2009).  A defendant may enter into a plea agreement that provides for the waiver of constitutional rights; indeed, "[d]efendants waive a whole panoply of rights by voluntarily pleading guilty."  Mapp v. State, 770 N.E.2d 332, 334-35 (Ind. 2002).  These rights that are subject to waiver include the right to a jury trial, the right against self-incrimination, the right to appeal the conviction, and the right to attack collaterally one's plea based on double jeopardy.  See id.

Our Supreme Court has also held that a defendant may waive the constitutional right to the appellate review of a sentence in a plea agreement.  Creech v. State, 887 N.E.2d 73, 75 (Ind. 2008).  And the waiver may be valid even when the trial court does not specifically advise the defendant that he is waiving the right to appeal his sentence.  Id.  at 77; see also Bowling v. State, 960 N.E.2d 837, 842 (Ind. Ct. App. 2012) (holding that a defendant knowingly and voluntarily waived her right to appeal her sentence by signing an advisement and waiver of rights form at the time of her guilty plea that

5

specified that by signing defendant acknowledged that she agreed to waive her right to appeal her sentence).

As discussed above, the signed plea agreement in this case specifically provided that "Defendant waives right to appeal." Appellant's App. p. 51. Although the agreement itself does not contain express language that Goodman agreed to waive appellate review of her <u>sentence</u>, the colloquy between Goodman, her counsel, and the trial court at both the guilty plea and sentencing hearings demonstrates that Goodman knew that she was also waiving appellate review of her sentence. Indeed, Goodman signed the agreement containing the waiver provision and acknowledged to the trial court that she reviewed the agreement with her counsel and understood the terms of the agreement. Tr. p. 3-4; Appellant's App. p. 51. Even more compelling, the parties' exchange with the trial court demonstrates that Goodman understood this language to mean that she was waiving her right to appeal her sentence. Tr. p. 4-5.

Although Goodman contends for the first time on appeal that she was "confused" by what the trial court stated at the sentencing hearing and, therefore, did not validly waive her right to appeal the sentence, neither she nor her counsel expressed any alleged misunderstanding at that time or at any later time during the proceedings. Appellant's Br. p. 7-8; Tr. p. 4-5. In fact, the trial court resolved any ambiguity relating to this provision by communicating with both Goodman, her counsel, and the deputy prosecutor, about the nature and scope of the language contained in the plea agreement regarding the right to appeal.

6

As noted above, Goodman's counsel expressly informed the trial court that Goodman "would waive her right to appeal the sentence." Tr. p. 4-5 (emphasis added). Goodman acknowledged to the trial court that she could not "try to change [the sentence] later." Id.

In light of these circumstances, we can only conclude that Goodman knew and understood that she was waiving the right to appeal her sentence. While the trial court initially expressed concern at the guilty plea hearing that the waiver provision embodied in the plea agreement applied only to Goodman's conviction, the deputy prosecutor immediately pointed out that the waiver provision also included an appeal of the sentence. Tr. p. 4. Again, Goodman's counsel acknowledged that this was the agreement of the parties stating, "yes, Judge, to the extent permissible [Goodman] would waive her right to appeal the sentence imposed." Id. at 5.

The parties also informed the trial court at sentencing that was conducted nearly a month after the guilty plea hearing that Goodman was waiving the right to appeal her sentence in accordance with the plea agreement. Tr. p. 24-25. Again, the deputy prosecutor informed the trial court that the parties intended the waiver provision to apply to sentence review, and Goodman's counsel specifically confirmed that the waiver provision included Goodman's waiver of her right to challenge the propriety of the sentence. Id. at 25.

In light of the above, the parties clearly intended the waiver provision to preclude sentence review on appeal. Goodman does not argue to the contrary and claims only that

7

the specific language of the plea agreement does not contain an "express waiver" of the right to appeal her sentence. Appellant's Br. p. 8.

While the specific language set forth in the agreement could have been clearer, we conclude that the trial court's colloquy and Goodman's representations and acknowledgments to the trial court demonstrate that she understood that, by pleading guilty in this case, she was foregoing the right to appeal her sentence. See Creech, 887 N.E.2d at 75; see also Brattain v. State, 891 N.E.2d 1055, 1057 (Ind. Ct. App. 2008) (noting that the defendant waived his right to appeal his sentence where the plea agreement provided in part that the defendant waived the right under Ind. Appellate Rule 7 to review of the sentence imposed). As a result, Goodman's claim fails, and she has waived appellate review of her sentence.[2]

## II. Appropriate Sentence

Even if we were to conclude solely for argument's sake that Goodman had not waived her right to appeal the propriety of her sentence, she would not prevail on her inappropriateness claim. With respect to Goodman's argument, Indiana Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the

---

[2] As an aside, we note that Goodman clearly invited any alleged error with regard to the issue of waiving her right to appeal her sentence. Thus, Goodman's claim also fails on this basis. See Kingery v. State, 659 N.E.2d 490, 494 (Ind.1995) (holding that an error invited by the complaining party is not reversible error).

8

burden is on the defendant to persuade us that the sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).[3] The sentencing range for a class A felony is from twenty to fifty years with an advisory sentence of thirty years. Ind. Code § 35-50-2-4.

As for the nature of the offense, the evidence reflects that Goodman participated in preying upon Manka, a ninety-two-year-old individual. Tr. p. 39. Manka continues to suffer from lasting injuries, including memory loss and severe pain. Id. The trial court noted that Manka will "never recover." Id. at 53.

Goodman plotted with her husband to burglarize Manka's residence and steal his property. The evidence demonstrates that Goodman drove her husband to and from the crime scene and back again after learning that her husband had initially abandoned the stolen property. Moreover, the record reveals that it was Goodman who retrieved Manka's property, which included some coins that she later cashed in at a grocery store. Id. at 13, 14. In short, the evidence indicates that Goodman participated in a brutal crime, and her nature of the offense argument avails her of nothing.

With regard to Goodman's character, we note that the trial court pointed out that her husband was more "culpable and the manipulator in this." Tr. p. 53. However, it was also observed that the crime could not have occurred without Goodman's participation.

---

[3] Although Goodman alludes to the fact that the trial abused its discretion in sentencing her because proper weight was not afforded to the aggravating and mitigating factors that were found, we note that "[b]ecause the trial court no longer has any obligation to 'weigh' aggravating and mitigating factors against each other when imposing a sentence . . . a trial court cannot now be said to have abused its discretion in failing to 'properly weigh' such factors." Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007), modified on other grounds on reh'g, 875 N.E.2d 218 (Ind. 2007).

9

Id. Indeed, Goodman assisted and enabled her husband in physically attacking Manka. Goodman never inquired about Manka's well-being even after being informed that her husband had hit Manka, and Manka had asked for his oxygen tank while lying on the floor. Tr. p. 16. This behavior certainly shows Goodman's callous attitude toward Manka.

Even though Goodman had a minor criminal history that consisted of an out-of-state marijuana possession conviction, it is apparent that the parties contemplated that one conviction by agreeing to a sentence cap of twenty years—the minimum sentence for a class A felony conviction. Put another way, Goodman agreed to limit the trial court's discretion to impose a sentence that was less than the statutory maximum by executing a plea agreement that capped the executed portion of her sentence at twenty years, which was thirty years below the maximum statutory sentence and ten years below the advisory sentence. Tr. p. 9, 10.

Here, when considering the nature of the offense and her character, we note that Goodman assisted in the burglary of a ninety-two year old man's residence. She also returned to the scene, recovered the stolen property, and failed to inquire about Manka's well-being after her husband had struck him, which resulted in significant and lasting harm. Under these circumstances, we cannot conclude that Goodman demonstrated that the sentence imposed was inappropriate.

Thus, even if we were to conclude that Goodman had not waived her right to challenge her sentence on appeal, Goodman has failed to show that the fifteen-year

executed sentence was inappropriate. As a result, we decline to set aside Goodman's sentence.

The judgment of the trial court is affirmed.

KIRSCH, J., and ROBB, J., concur.