

FILED

Oct 11 2019, 9:13 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Darren Bedwell
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samantha M. Sumcad
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kameron Wesley Martin, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | October 11, 2019 <br><br> Court of Appeals Case No. <br> 19A-CR-183 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Mark D. Stoner, Judge <br><br> Trial Court Cause No. <br> 49G06-1604-MR-13185 |

**Altice, Judge.**

## Case Summary

[1]     A jury found Kameron Martin guilty of, among other things, murder and robbery as a Level 2 felony, elevated based on the serious bodily injury sustained by the murder victim when he was shot and killed. To avoid a double

jeopardy violation, the trial court entered the robbery conviction as a Level 3 felony rather than a Level 2 felony. On appeal, Martin argues that the robbery conviction should have been reduced to a Level 5 felony because the use of a deadly weapon element, relied upon by the trial court as the basis for the Level 3 felony, was not found by the jury beyond a reasonable doubt.

[2] We vacate the sentence for Level 3 felony robbery and remand for sentencing on Level 5 felony robbery.

## Facts & Procedural History

[3] On the evening of March 11, 2016, Martin and Anthony Breaziel planned the robbery of a liquor store a few blocks away from Martin's residence in Indianapolis. Martin and Breaziel, both armed with handguns, left the residence with Corey Spurlock. An unidentified woman drove them to the liquor store and stayed outside waiting in the car.

[4] The three men entered the liquor store around 1:45 a.m. on March 12, wearing masks and hoods, and quickly dispersed throughout the store. There were two employees, Walter Woods and Diana Montgomery, and the owner, Joe Klein, inside. Spurlock went behind the counter, while Breaziel approached Montgomery who was stocking shelves. He pointed his gun at her and requested that she open the safe. Because she could not access the safe, Breaziel directed her to the register to open the cash drawer.

[5]     In the meantime, Martin went into the back office where Klein was working at his desk. Martin quickly pocketed a revolver that Klein had on the desk and then pointed his own gun at Klein, who raised his hands and stood up. Martin backed out of the office as Klein followed at gunpoint as directed. When he reached the door, however, Klein tried to close the door between him and Martin and reached for a shotgun that rested behind the door, but Martin fired two shots. One of the bullets passed through the door and into the left side of Klein's chest. Klein collapsed to the floor and died at the scene.

[6]     Upon hearing the shots, Spurlock ran out of the store and, after grabbing the entire cash register drawer, Breaziel followed. Martin also fled. The three men and the woman went back to Martin's residence and split the proceeds of the robbery after opening the cash register drawer with a hammer. Thereafter, Martin burned the clothes he had been wearing and gave away Klein's revolver.

[7]     On April 7, 2016, the State charged Martin with four counts – murder (Count 1), felony murder (Count 2), Level 2 felony robbery (Count 3), and Level 4 felony unlawful possession of a firearm by a serious violent felon (Count 4). On June 8, 2016, the State amended the information to include a charge of Level 3 felony conspiracy to commit robbery (Count 5). Following a three-day trial in early December 2018,[1] the jury found Martin guilty on all counts as charged, except that the bifurcated portion relating to the serious violent felon

---

[1] Martin's two prior jury trials in this case each ended in mistrial. The first was due to the malfunctioning of the trial court's recording system. The second resulted in a hung jury.

determination had yet to be held. On the State's motion, the trial court dismissed Count 4.

[8] The sentencing hearing was held on December 20, 2018, at which the parties and the trial court discussed double jeopardy issues regarding the four remaining counts. Ultimately, the trial court entered judgment of conviction on only two counts, explaining:

> Count 1 is entered as a conviction. Count 2 is shown as – again proven, but not entered as a conviction for double jeopardy purposes. Count 3, by agreement of the parties[,] is reduced for double jeopardy considerations to a Level 3 felony. Count 4 was dismissed by the State of Indiana. Count 5, the Court finds merges … because the overt act for the conspiracy was in fact the robbery in which conviction was entered.

*Transcript Vol. 4* at 159. The trial court then sentenced Martin to consecutive terms of sixty-two years for murder and ten years for Level 3 felony robbery. On appeal, Martin challenges only his robbery conviction, arguing that it should have been entered as a Level 5 rather than a Level 3 felony.

## Discussion & Decision

[9] There is no dispute that Martin could not be convicted of both murder and robbery as a Level 2 felony without violating principles of double jeopardy. That is because the same evidence that supported the murder conviction was used to elevate the robbery conviction to a Level 2 felony based on the serious bodily injury sustained by the murder victim. *See, e.g.*, *Logan v. State*, 729

N.E.2d 125, 136 (Ind. 2000) (Class A felony robbery conviction could not stand where "[t]he serious bodily injury alleged and proven by the State in this case was [the victim's] death, the same fact used to convict Logan of murder"); *Kingery v. State*, 659 N.E.2d 490, 495-96 (Ind. 1995) ("Where a single act … forms the basis both for the upgrade … of the robbery conviction and also the act element of the murder charge, a defendant cannot be twice sentenced for committing this single act. To do so would violate the prohibition against double jeopardy.").

[10] Of course, as Martin concedes, this did not entitle him to escape conviction and punishment for the robbery of which he was convicted. There are three felony classes of robbery that are relevant here:

> Except as provided in subsection (b), a person who knowingly or intentionally takes property from another person or from the presence of another person:
>
> > (1) by using or threatening the use of force on any person; or
> >
> > (2) by putting any person in fear;
>
> commits robbery, a Level 5 felony. However, the offense is a Level 3 felony if it is committed while armed with a deadly weapon or results in bodily injury to any person other than a defendant, and a Level 2 felony if it results in serious bodily injury to any person other than a defendant.

Ind. Code § 35-42-5-1(a).[2]  Robbery as a Level 5 felony is a lesser-included offense of robbery as a Level 2 felony, as is robbery as a Level 3 felony when elevated based on bodily injury to the victim.  But robbery as a Level 3 felony based on the use of a deadly weapon is not necessarily a lesser-included offense of robbery as a Level 2 felony.

[11]  Here, because the only injury alleged by the State was the gunshot wound that resulted in the victim's death, the robbery conviction could not be elevated to a Level 3 felony based on the bodily injury suffered by the victim.  *See Logan*, 729 N.E.2d at 137.  The trial court recognized this and, therefore, entered the robbery conviction as a Level 3 felony on the basis that Martin was armed with a deadly weapon when he committed the robbery.  The fundamental problem with this is that the State did not allege the use of a deadly weapon as an enhancement of the robbery offense, and the jury was never instructed on the use of a deadly weapon as an enhancement of the robbery offense.[3]  As a result, reduction of the robbery conviction to a Level 5 felony was the proper remedy. *See Spears v. State*, 735 N.E.2d 1161, 1165 n.2 (Ind. 2000) (jury not instructed on use of a deadly weapon and thus reduction to the lowest felony robbery (then a Class C felony) was the proper remedy for a double jeopardy violation); *Logan*,

---

[2] Subsection (b) of the statute addresses the robbery of a pharmacist/pharmacy and sets out different felony levels.

[3] The jury instructions set forth the elements of robbery as a Level 5 felony and provided that the charge could be enhanced to a Level 2 felony if the State proved beyond a reasonable doubt that Martin caused serious bodily injury to the victim.  There was no instruction on robbery as a Level 3 felony or, in particular, the element of use of a deadly weapon.

729 N.E.2d at 137 (Class B felony robbery was not a lesser-included offense where the State did not allege use of a deadly weapon as an enhancement); *Kingery*, 659 N.E.2d at 496 ("The Class B requisite element, committing robbery while armed with a deadly weapon, is absent from the Class A/Class C instruction given to the jury.").[4]

[12] The State argues that Martin invited this error by expressly agreeing with the State's suggestion at sentencing that the robbery conviction should be reduced to a Level 3 felony.[5] We agree with Martin, however, that the State seems to conflate two distinct concepts – waiver and invited error. In *Batchelor v. State*, 119 N.E.3d 550, 556-59 (Ind. 2019), our Supreme Court discussed the distinctions between these two doctrines. The distinctions are important because "whereas waiver generally leaves open an appellant's claim to fundamental-error review, invited error typically forecloses appellate review altogether." *Id*. at 556.

---

[4] Each of these cases involved convictions for murder and robbery with a shooting as the basis of the victim's death and serious bodily injury. Yet the Indiana Supreme Court consistently held that the robbery conviction could not be elevated based on the defendant's use of a deadly weapon (a firearm) unless the jury was specifically instructed on this element. Accordingly, we reject the State's assertion that Level 3 felony robbery was a lesser-included offense "[b]ecause the jury necessarily had to find that Martin was armed with a deadly weapon to shoot Klein with a gun…" *Appellee's Brief* at 10. We also find inapposite the cases cited by the State in support of this assertion because in those cases the jury was expressly instructed on the enhancement element. *See, e.g.*, *Robinson v. State*, 775 N.E.2d 316, 320 (Ind. 2002) ("The jury was instructed that to convict Robinson it must find that Robinson acted 'while armed with a deadly weapon.' Accordingly, enhancement of the [robbery] offense to a B felony was proper.").

[5] After the State made its sentencing argument, the trial court asked defense counsel whether she agreed that Count 3 should be a Level 3 felony. Counsel responded, "Yes, Judge I agree." *Transcript Vol. 4* at 154.

[13]     The Court made clear the limited application of the invited error doctrine.

> [W]e have consistently required something more than mere "neglect" before applying the automatic rule of preclusion: evidence of counsel's strategic maneuvering at trial. Indeed, this Court has long held that the "policy behind" the doctrine is to prohibit a party, privy to an "erroneous action of the court," from alleging "prejudicial error" following an adverse decision.
>
> In reaffirming this precedent, we emphasize today that, to establish invited error, there must be some evidence that the error resulted from the appellant's affirmative actions as part of a deliberate, "well-informed" trial strategy. A "passive lack of objection," standing alone, is simply not enough. And when there is no evidence of counsel's strategic maneuvering, we are reluctant to find invited error based on the appellant's neglect or mere acquiescence to an error introduced by the court or opposing counsel….
>
> To be sure, cases often arise when either the source of the error or counsel's motives at trial are less than clear. And appellate courts should exercise their judgment in deciding the issue. But when a careful reading of the record fails to disclose enough information, courts should resolve any doubts against a finding of invited error rather than engage in speculation.

*Id*. at 557-58 (internal citations omitted).

[14]     Our review of the record in this case reveals that defense counsel's acquiescence, though affirmatively stated, was not part of a deliberate trial strategy and amounted only to mere neglect. Thus, Martin's claim on appeal is not foreclosed by the doctrine of invited error.

Martin was sentenced for a crime – Level 3 Felony robbery – for which he had not been convicted. This amounted to fundamental error. *See Kingery*, 659 N.E.2d at 496 ("A person cannot be sentenced for a crime for which that person has not been convicted."). Accordingly, we vacate Martin's sentence for Level 3 felony robbery and remand for a new sentencing hearing on the Level 5 felony robbery conviction.

Judgment vacated in part and remanded for a new sentencing hearing on the Level 5 felony robbery conviction.

Brown, J. and Tavitas, J., concur.