**Kenneth R. GAMBLE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–0406–CR–490.

Court of Appeals of Indiana.

July 20, 2005.

Transfer Denied Sept. 20, 2005.

Teresa D. Harper, Bloomington, for Appellant.

Steve Carter, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General, Indianapolis, for Appellee.

**OPINION**

BARNES, Judge.

### Case Summary

Kenneth Gamble appeals his conviction for attempted murder, a Class A felony. We affirm.

### Issues

Gamble raises three issues, which we restate as:

I. whether the admission of 911 calls violated his Sixth Amendment right to confrontation;

II. whether a statement made by the prosecutor in his closing argument was reversible prosecutorial misconduct; and

III. whether the jury was properly instructed.

### Facts

In the evening of September 15, 2003, Levon Berry was working in the front yard of a home in Indianapolis with his friend April Taylor. Berry's brother, William Berry, joined the pair. Gamble lived across the street from where Berry was working. Apparently, Gamble had loaned William $20.00, and William gave Berry

$20.00 with which to repay Gamble. Instead of repaying Gamble, Berry kept the money for himself. At some point, Gamble and his brother, Terry Berry, who were Berry's first cousins, arrived at Gamble's house. Gamble approached Berry about the money and began fighting with Berry. Berry backed away from Gamble repeatedly and insisted he did not want to fight, but eventually he fought back. During the fight, Gamble retrieved a bat from his house and began smashing Berry's bike with the bat until the bat broke. Gamble stated that he was going to kill Berry and Berry told Taylor that he was going home to get a gun. As he was running through an alley toward his house, Terry and Gamble followed him. Gamble fired a sawed off shot gun at Berry as he attempted to get into William's car. Berry was shot in the buttocks, leg, and wrist. Gamble and Terry then fled the scene.

After the shooting, two people called 911 and reported the incident. On September 18, 2003, the State charged Gamble with attempted murder. A jury found him guilty as charged, and he now appeals.

### Analysis

#### I. Admission of the 911 Call [1]

Gamble argues that the trial court improperly admitted a recording of a 911 call into evidence. The admission of evidence is within the trial court's discretion, and its decisions are reviewed only for an abuse of that discretion. *McManus v. State*, 814 N.E.2d 253, 264 (Ind.2004), *cert. pending*. Gamble relies on *Crawford v. Washington*, 541 U.S. 36, 69–69, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004), in which the Supreme Court addressed the admissibility of an out of court statement made to the police and held, "Where testi-

---

[1] On appeal, Gamble does not challenge the admissibility of the calls under the Indiana Evidence Rules.

monial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation."

Our supreme court has recently considered how *Crawford* affects the admissibility of statements that qualify as excited utterances under Indiana Evidence Rule 803(2). *Hammon v. State*, 829 N.E.2d 444, 449-450 (2005). The *Hammon* court observed:

> *Crawford* thus makes clear that confrontation, not reliability, is the key to the Sixth Amendment right, which applies in state courts through the Fourteenth Amendment. Because it turns only on confrontation, *Crawford* bars admission of some forms of out of court statements that have been viewed as sufficiently reliable to be admissible under Rules of Evidence.

*Id.* (citation omitted). Based on *Crawford*, our supreme court observed that "testimonial" statements trigger Sixth Amendment confrontation rights. *Id.* at 450. Although the Supreme Court identified certain "core forms" of testimony that trigger the Sixth Amendment right to confrontation, it also considered statements that an " 'objective witness reasonably [would] believe . . . would be available for use at a later trial" ' as "testimonial" in nature. *Id.* at 452 (quoting *Crawford*, 541 U.S. at 52, 124 S.Ct. at 1364) (alteration in original).

■ After considering the views of this court and the courts of other jurisdictions, the *Hammon* court concluded, "a 'testimonial' statement is one given or taken in significant part for purposes of preserving it for potential future use in legal proceedings." *Id.* at 456. "In evaluating whether a statement is for purposes of future legal

utility, the motive of the questioner, more than that of the declarant, is determinative, but if either is principally motivated by a desire to preserve the statement it is sufficient to render the statement 'testimonial." ' *Id.*

■ In light of this framework, Gamble asks us to consider whether a statement by an uninvolved witness made to a 911 operator is "testimonial," thereby invoking his Sixth Amendment right to confrontation. A tape recording of the two [2] 911 calls was admitted into evidence and played for the jury over Gamble's objection. The first call was from a woman asking to send someone because a person had been shot by a man in a maroon car. The woman indicated the three or four shots were fired, but she could not describe the shooter because he was in the car. The second caller reported that someone had been shot and was lying in the middle of the street. She indicated that she did not know who shot him because she only ran outside after she heard the gunshots.

Gamble distinguishes 911 calls made by third parties from those made by victims themselves. He asserts that third parties call 911 "specifically to *report on and provide evidence* regarding a crime." Appellant's Br. p. 8. When victims make 911 calls, however, they are "seeking immediate protection and attention from emergency personnel." *Id.* at 9. Accordingly, Gamble contends, the admission of the calls was in violation of his Sixth Amendment right to confrontation.

We disagree that the distinction is as simple as Gamble asserts. This issue is not who makes the call, but whether the

---

**2.** Although in discussing the admissibility of the tape the prosecutor stated that it was just one 911 call, the tape includes two brief 911 calls. We will assume that both calls were played for the jury.

caller's statement is "testimonial." In deciding whether 911 calls by persons other than victims are testimonial, one New York court concluded that they are because they follow established procedures, rules, and patterns of information collection, they are recorded like statements to a police officer, and they are preserved as official documents. *People v. Cortes*, 4 Misc.3d 575, 583–95, 781 N.Y.S.2d 401 (N.Y.Sup.Ct.2004). Moreover, the court emphasized that those reporting a crime know their statement will be used in an investigation and at proceedings relating to the prosecution. *Id.* at 595, 781 N.Y.S.2d 401.

We agree that 911 calls are subject to established procedures, recorded, and preserved and that those reporting a crime often know their statement might be used in an investigation and at proceedings relating to the prosecution. However, we cannot conclude that the admission of the 911 calls violated Gamble's Sixth Amendment rights because, under a *Hammon* analysis, the statements to the operators are not "testimonial."

In evaluating the motive of the questioner, we are well aware that 911 operators often obtain descriptions of suspects for identification purposes. However, we cannot say that 911 operators are "principally motivated" by a desire to preserve the statement for future investigations or prosecution. *Hammon*, at 456. Not all 911 calls by third persons are for the purpose of reporting a crime. Certainly, third parties call 911 to report medical emergencies, automobile accidents, fires, and other emergencies that are not criminal in nature. Instead, we conclude that 911 operators are principally motivated to alert the appropriate emergency personnel of emergency situations. A by-product this process is the gathering of information that

may subsequently be used in a criminal investigation or prosecution.

The declarant's motive, however, is a much more fact sensitive consideration. Although we can contemplate a situation in which a victim or a third party might call 911 with the principal motivation of preserving a statement, such is not the case here. Both callers immediately reported that someone had been shot and identified the location of the victim. They also gave personal information identifying themselves. Neither caller gave physical descriptions of Gamble or any other information that could be used to implicate him other than one caller stating that the shooter was in a maroon vehicle. In fact, the other caller stated she was in her house when the shooting occurred and went outside only after hearing gunshots. It is clear that the principal motive of the callers was to alert emergency medical personal that someone had been shot. Under these circumstances, the callers' statements were not "testimonial," and the admission of the tapes did not violate Gamble's Sixth Amendment right to confrontation.

## II. Prosecutorial Misconduct

Gamble argues that a statement made by the prosecutor during closing arguments was prosecutorial misconduct. During his closing argument, the prosecutor stated, "You also, though, didn't hear any testimony about Kenny Gamble going to a police station." Tr. p. 322. Defense counsel objected on the basis that "the prosecutor is implying to the jury that there is a responsibility on, on the defendant to produce evidence, and there is no responsibility." *Id.* After the trial court sustained the objection, defense counsel moved for a mistrial, which the trial court denied.

As our supreme court has observed:

> Not only must a defendant object to alleged misconduct, he or she must also

request an appropriate remedy. Generally, the correct procedure is to request an admonishment. However, if counsel is not satisfied with the admonishment or it is obvious that the admonishment will not be sufficient to cure the error, counsel may then move for a mistrial.

*Etienne v. State*, 716 N.E.2d 457, 461 (Ind. 1999) (citations omitted). Where defense counsel neither requested an admonishment nor moved for a mistrial, the issue was waived.

■ Here, defense counsel did not request an admonishment. Instead, he immediately moved for a mistrial. In his reply brief Gamble argues that an admonition would compound the error by drawing attention to it. He asserts, "This would be analogous to an invited error where defense counsel would be required to make the problem worse before asking for a mistrial, hoping that it would be granted." Appellant's Reply Br. p. 6.

Although Gamble's point might have some merit, whether to request an admonishment before moving for a mistrial cannot be written off as a matter of trial strategy. Our supreme court has repeatedly set out the proper method for challenging alleged prosecutorial misconduct. Defense counsel did not follow this procedure and now Gamble claims the prosecutor's statement was reversible error.

■ "A timely and accurate admonition is presumed to cure any error in the admission of evidence." *Banks v. State*, 761 N.E.2d 403, 405 (Ind.2002) (quotation omitted). Had defense counsel requested an admonishment, the trial court would have had the opportunity to admonish the jury and presumably cure any error. *See id.* By not requesting an admonishment when he had the opportunity, Gamble essentially invited the error. "A party may not invite error, then later argue that the error supports reversal, because error invited by the complaining party is not reversible error." *Kingery v. State*, 659 N.E.2d 490, 494 (Ind.1995). Because invited errors are not subject to appellate review, this issue is waived. *See id.*

■ Waiver notwithstanding, even if Gamble's objection properly preserved the issue of prosecutorial misconduct, we must first determine whether misconduct occurred, and if so whether it had a probable persuasive effect on the jury. *See Ritchie v. State*, 809 N.E.2d 258, 268 (Ind.2004) *cert. pending.*[3] Even if the prosecutor's statement amounted to misconduct as Gamble contends, we cannot conclude that it had a probable persuasive effect on the jury.[4] Berry, William, and Taylor all provided similar testimony of the fight and

---

3. Gamble relies on cases discussing a prosecutor's reference to a defendant's Fifth Amendment right to remain silent. However, Gamble's objection at trial was based on burden of proof, not his constitutional right to remain silent. Further, the prosecutor did not question or draw attention to Gamble invoking his Fifth Amendment rights. Thus, the right to remain silent is not properly at issue today.

4. Gamble argues without citation in his reply brief that because the State did not respond to his "grave peril" argument in its Appellee's Brief, it conceded this issue. Even if we consider the State's failure to respond to the issue of grave peril as a failure to respond to the entire issue of prosecutorial misconduct, "An appellee's failure to respond to an issue raised by an appellant is akin to failure to file a brief." *Newman v. State*, 719 N.E.2d 832, 838 (Ind.Ct.App.1999), *trans.denied.* "This circumstance does not, however, relieve us of our obligation to decide the law as applied to the facts in the record in order to determine whether reversal is required." *Id.* Thus, we review Gamble's claim for prima facie error or error "at first sight, on first appearance, or on the face of it." *Id.*

the shooting, identifying Gamble as the shooter. Further, the jury was instructed that the State bore the burden of proof, that Gamble was not required to present any evidence proving his innocence or explaining anything, and that statements made by attorneys are not evidence. In light of the overwhelming evidence against Gamble and the jury instructions, we are confident that the prosecutor's statement did not have a probable persuasive effect on the jury.

### III. Jury Instructions

▬▬▬ Gamble argues that the manner in which the jury was instructed requires that he be granted a new trial. Instructing the jury is a matter within the sound discretion of the trial court, and we review a trial court's decision on such matters for an abuse of discretion. *Slate v. State*, 798 N.E.2d 510, 514 (Ind.Ct.App. 2003). In reviewing a trial court's decision to give or refuse tendered jury instructions, we consider "(1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions which are given." *Guyton v. State*, 771 N.E.2d 1141, 1144 (Ind.2002). "The law is settled that failure to object to a jury instruction given by the trial court waives the issue for review." *Fisher v. State*, 810 N.E.2d 674, 677 (Ind.2004).

#### A. Attempted Murder Instructions

Gamble first asserts that the trial court's attempted murder instruction was improper. The instruction provides:

### INSTRUCTION NUMBER 24

A person attempts to commit a crime when he knowingly engages in conduct that constitutes a substantial step toward the commission of a crime.

The crime of murder is defined by statute as follows: "A person who knowingly or intentionally kills another human being, commits murder, a felony."

To convict the defendant of the crime of Attempt Murder, the State must have proven each of the following elements:

1. the defendant, Kenneth Gamble,
2. with the intent to kill Lee Berry,
3. did knowingly,
4. engage in conduct that is: shot a deadly weapon, that is: a shotgun, at and against the person of Lee Berry,
5. which conduct constituted a substantial step toward the commission of the crime of murder.

If the State failed to prove each of these elements beyond a reasonable doubt, you may find the defendant, not guilty of attempt murder, a Class A felony, as charged in Count I.

If the State did prove each of these elements beyond a reasonable doubt, you should find the defendant guilty of attempt murder, a Class A felony, as charged in Count I.

Appellant's App. p. 100.

▬▬▬ Gamble concedes that he did not object to this instruction at trial and to avoid waiver argues that the giving of this instruction is fundamental error. Although Gamble provides us with no framework with which to review such a claim, it is well settled that fundamental error is "error so egregious that reversal of a criminal conviction is required even if no objection to the error is registered at trial." *Hopkins v. State*, 782 N.E.2d 988, 991 (Ind.2003). Fundamental error requires prejudice to the defendant. *Id.*

■ Gamble contends that this instruction insufficiently describes the mens rea required to find a defendant guilty of attempted murder. He asserts that the terms knowingly and intentionally "are used almost interchangeably." Appellant's Br. p. 19. It is undisputed that an attempted murder instruction must include the required mens rea of specific intent to kill. *Ramsey v. State,* 723 N.E.2d 869, 871 (Ind.2000). Although we would prefer that trial courts give more accurate instructions as to the mens rea for attempted murder, this instruction does not amount to fundamental error.

In *Ramsey,* our supreme court considered that although the trial court should not have included the word "knowingly" in an instruction similar to that at issue today, no fundamental error was established. *Id.* at 872. Our supreme court acknowledged that the instruction included the "specific intent to kill" among the elements that the State was required to prove beyond a reasonable doubt and that the trial court read the jury the charging information containing the proper mens rea. *Id.* at 872–73. In affirming the attempted murder conviction, the court concluded, "we believe that the jury instructions, taken as a whole, sufficiently informed the jury of the State's burden of proving that the Defendant specifically intended to kill the victim." *Id.* at 873.

■ As in *Ramsey,* Instruction 24 required the jury to find that Gamble acted "with the intent to kill Lee Berry" and Instruction 25 specifically refers to the "specific intent to kill." Appellant's App. pp. 100–01. Further, the preliminary instructions included the charging information, which alleged that Gamble attempted to "intentionally" kill Berry. *Id.* at 78. Instruction 21 informed the jury that the charging information was available for the jury's review. As in *Ramsey,* we conclude

that the instructions, taken as a whole, sufficiently informed the jury of the State's burden to prove that Gamble intended to kill Berry. *See Ramsey,* 723 N.E.2d at 873.

■ Further, even if the instruction was insufficient, a review of the evidence indicates that Gamble was not prejudiced by it. *See Hopkins,* 782 N.E.2d at 991. Berry testified that Gamble stated he was going to kill him, that he retrieved a sawed off shotgun, followed Gamble, who was on foot, in a car driven by his brother, and shot at him several times. In fact, Berry suffered three gunshot wounds. This testimony was corroborated by William's and Taylor's testimony. This evidence shows Gamble's specific intent to kill Berry.

■ Gamble also argues that Instruction 25 improperly allowed the jury to consider the use of deadly weapon in a manner likely to cause serious bodily injury. This instruction provides:

### INSTRUCTION 25

In determining whether a person possessed the specific intent to kill, you may consider such factors as the use of a deadly weapon in a manner likely to cause serious bodily injury or death; discharge of a weapon in the direction of a victim; the part of the body in which the wound was inflicted; the acts, declarations, and conduct of a person at or just immediately before the commission of the act; and any other circumstances you find relevant to your determination.

Appellant's App. p. 101. Although he objected to this instruction, this argument also fails. Based on the evidence discussed above, any alleged error in the giving of this instruction would be harmless. *See Dill v. State,* 741 N.E.2d 1230, 1233 (Ind.2001) ("Errors in the giving or refusing of instructions are harmless

where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise.").

### B. Self–Defense Instruction

Gamble also argues that the trial court improperly gave the State's tendered instruction informing the jury that it could not consider that Gamble was acting in self defense. The instruction provided:

### INSTRUCTION 29

Earlier in the proceeding there was some discussion of the doctrine of self-defense. Under Indiana law, you may not consider self-defense in this case.

Appellant's App. p. 106.

During voir dire defense counsel instructed the potential jurors on the definition of self-defense and, in his opening statement, defense counsel said that Gamble was acting in self-defense. Gamble argued before the trial court that Taylor's testimony that after Gamble stated he was going to kill Berry, Berry said he was going home to get his gun supported the theory of self-defense.

 Although Gamble argues on appeal that he objected to this instruction, a careful review of the transcript indicates otherwise. When discussing the jury instructions, the State indicated it was tendering this instruction because defense counsel defined self-defense during voir dire and argued self-defense in his opening statement. In response, defense counsel objected on the grounds that instructions

should be based on the evidence and not arguments made by counsel. After some discussion, defense counsel stated, "I withdraw the objection, Judge." Tr. p. 296. Accordingly, the trial court gave the instruction. Based on this exchange, we do not agree that the issue was properly preserved and Gamble does not argue on appeal that it amounts to fundamental error.

 Moreover, defense counsel called the issue of self-defense to the jury's attention during voir dire and his opening statement but did not offer evidence to support such a defense.[5] Any error resulting from the trial court giving an instruction explaining that self-defense was not available to Gamble when defense counsel placed the issue before the jury and provided no evidence to support it is invited error. Gamble may not invite error and then argue that the error supports reversal. Error invited by the complaining party is not reversible error. *See Kingery*, 659 N.E.2d at 494.

### Conclusion

The statements made to the 911 operators were not "testimonial" and were not admitted in violation of Gamble's Sixth Amendment right to confrontation. Gamble waived the issue of prosecutorial misconduct because he did not request an admonishment. The attempted murder jury instruction does not amount to fundamental error, any error in the specific intent instruction is harmless, and Gamble did not properly preserve any error in the

---

**5.** Although he asserts that the evidence indicates Berry was going home to get his gun when he shot him, it is clear that Gamble was not responding to Berry's deadly force when he shot Berry, who was unarmed and leaving the scene of the fight. *See* Ind.Code § 35–41–3–2(a) (" [A] person is justified in using deadly force only if the person reasonably believes that that force is necessary to prevent serious

bodily injury to the person or a third person or the commission of a forcible felony."); *see also Milam v. State*, 719 N.E.2d 1208, 1210 (Ind.1999) ("Thus, among other things, the defendant's claim requires that she did not provoke, instigate or participate willingly in the violence."). There is no evidence to support a claim of self defense in this case.

giving of the self-defense instruction. We affirm.

Affirmed.

KIRSCH, C.J., and BAKER, J., concur.