**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**LISA M. TRAYLOR-WOLFF**
Public Defender
Logansport, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN MCLEAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SCOTT D. WAMPLER, JR., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 09A02-1201-CR-61 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE CASS SUPERIOR COURT
The Honorable Richard A. Maughmer, Judge
Cause No. 09D02-1109-FA-14

**July 3, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

**STATEMENT OF THE CASE**[1]

Scott D. Wampler, Jr. appeals his convictions and sentence for burglary, as a Class B felony, and criminal confinement, as a Class B felony, following an open plea. Wampler presents four issues for review, which we consolidate and restate as:

1.      Whether Wampler waived review of his double jeopardy claim by pleading guilty to the offenses.

2.      Whether the trial court abused its discretion when it identified aggravators in sentencing Wampler.

3.      Whether Wampler's sentence is inappropriate in light of the nature of the offenses and his character.

We affirm.

**FACTS AND PROCEDURAL HISTORY**

On August 21, 2011, Wampler was making a purchase at a gas station when he saw the owner, Harwinder Kaur, leaving with a "bank bag." Hearing Transcript at 17.[2] Wampler followed her to her home and made a plan to take the money in the bank bag. The following day, Wampler went to Kaur's home and entered the garage. Wearing a ski mask, Wampler knocked on the door that led from the garage to the house. When Kaur answered, Wampler placed a "BB gun in her face and forced [his] way into her home" in order to take the money from the bank bag. Id. at 18. Once inside the home, Wampler forced Kaur to retrieve the bank bag from a closet and give him the money inside the bag.

---

[1] We note that the record in this case emits an unpleasant odor consistent with that of cigarette or pipe smoke that is apparent, offensive, and consistent. We kindly request all those who prepare and file the briefs and record on appeal to avoid such contamination of submissions on appeal in the future.

[2] The record on appeal contains two transcripts that are numbered separately. We will refer to the transcript of the October 31, 2011, hearing, at which Wampler changed his plea, as the "Hearing Transcript." We will refer to the transcript of the sentencing hearing, held January 10, 2012, as the "Sentencing Transcript."

2

Wampler taped the hands and feet of Kaur and her visiting mother-in-law and then left the home.

On September 2, 2011, the State charged Wampler with burglary resulting in bodily injury, as a Class A felony; robbery resulting in bodily injury, as a Class B felony; and criminal confinement, as a Class B felony. At a hearing on October 31 on Wampler's motion to suppress evidence, Wampler, by counsel, announced that he wished to plead guilty to two Class B felonies. Following a colloquy among the State, defense counsel, and the court, the court recessed to allow the State to add a fourth count charging burglary, as a Class B felony. When the hearing reconvened, Wampler pleaded guilty to criminal confinement and the new burglary count, both as Class B felonies. The trial court subsequently accepted the plea.

At the sentencing hearing on January 10, 2012, the trial court sentenced Wampler to twenty years on each count to which Wampler had pleaded guilty, to be served consecutively, and the court granted the State's motion to dismiss Counts 1 and 2. Wampler now appeals.

## DISCUSSION AND DECISION

### Issue One: Waiver of Double Jeopardy Claim

Wampler first contends that his convictions for burglary and criminal confinement, as Class B felonies, violate common law double jeopardy principles. The State counters that, even if such an error were committed, Wampler waived review because he invited the error by pleading guilty. We agree with the State.

3

A party may not invite error and later argue that the error supports reversal, because error invited by the complaining party is not reversible error. Booher v. State, 773 N.E.2d 814, 822 (Ind. 2002). As such, invited errors are not subject to appellate review. Gamble v. State, 831 N.E.2d 178, 184 (Ind. Ct. App. 2005), trans. denied. And defendants "who plead guilty to achieve favorable outcomes give up a plethora of substantive claims and procedural rights, such as challenges to convictions that would otherwise constitute double jeopardy." McElroy v. State, 864 N.E.2d 392, 396 (Ind. Ct. App. 2007) (internal quotation marks and citation omitted), trans. denied.

Here, the State charged Wampler with burglary resulting in bodily injury, as a Class A felony; robbery resulting in bodily injury, as a Class B felony; and criminal confinement, as a Class B felony. Wampler concedes that he pleaded guilty to Class B felony burglary and Class B felony criminal confinement but denies that there was a plea agreement. As such, he contends, he did not waive review of his double jeopardy claim.

But a review of the Hearing Transcript showing Wampler's change of plea shows cooperation between Wampler and the State. Specifically, when Wampler announced that he wished to change his plea to guilty to two Class B felony charges, the following colloquy ensued:

> [Defense]: Judge, we have a change of [plea]. Mr. Wampler wants to plead guilty to the lesser included offense[.]
>
> [State]: That would be Count 2 [robbery, as a Class B felony] and Count 3 [criminal confinement, as a Class B felony].
>
> [Defense]: I thought it was [the] lesser included Burglary, Count 1 and then Count 3, Criminal Confinement.

4

[State]:      No, we'll just do Count 2 and Count 3 that way I don't have to deal with a lesser included offense.

Court:        Don't have to deal with what?

[State]:      A lesser included offense, Judge.

Court:        Well, let me talk about Count 2 and Count 3. That's the robbery and criminal confinement?

[Defense]:    Yes.

Court:        Okay and I got sidetracked[.]

[State]:      My intent is for him to—if he is choosing to plead guilty to two B felonies it is my intent to allow him to plead to two B felonies that will have the potential of stacking—consecutive.

Court:        I didn't hear everything you said. I was looking at some of the instructions you had given me and I looked specifically at the case of Meriweather that talked about the BB [gun] and that got me into a discussion about whether or not robbery resulting in bodily injury and criminal confinement are one and the same offense. And they are unless double jeopardy does not prohibit conviction of confinement or robbery when the facts indicate that the confinement was more extensive than necessary to commit the robbery or in the alternative, you've obviously got to have facts that are separate and apart—two separate acts.

[State]:      Well, I wonder if burglary—the reason I was concerned about the burglary is because it was a lesser included offense and I'm not sure the court will—does the court wish me to produce a new charging instrument with a B felony burglary? Should I just do that?

Court:        I think that would be the cleanest way if this is the way you are going to do it. So you are going to do a burglary and what?

[State]:      And a criminal confinement.

Court:        Okay and those are clearly are [sic] different offenses.  You [have] still though got to deal with getting over the hurdle o[f] they are going to admit the BB [g]un was a deadly weapon.

[State]:      Yes.  That's part of the factual.

Court:        If we are going to do this then we need to go make the charging information.  We need to get this done now or we need to go ahead and have the suppression hearing now, whatever you want to do, counsel.

[State]:      I'll do the charging information if the Court will allow me to do it.

Court:        Absolutely, I'll allow you to do it.  Let's take a recess then.

* * *

Court:        We are back on the record in the State versus Scott Wampler.  First, I have pending a question with counsel, do you wish that I redo or rather re-advise the defendant as it relates to Counts 1, 2 & 3 by way of the amended information filed 31 October?

[Defense]:    No.

Court:        Okay.  Ms. Swaim [for the State]?

[State]:      No.

Court:        Okay, Scott, it is my understanding then based upon the representations made that you desire to enter a plea in Count[s] 3 and 4 that are presently pending against you, is that correct?

Defendant:    Yes, sir.

Hearing Transcript at 3-6.  Following that exchange, the trial court entered guilty pleas to Count 3, Class B felony criminal confinement, and the newly filed Count 4, Class B felony burglary.  On November 2, the trial court cancelled the jury trial date, and at sentencing on January 10, 2012, the State moved to dismiss Counts 1 and 2.

6

In sum, Wampler asked to plead guilty to two B felonies. To accomplish that, and the State's stated goal that Wampler's sentences be subject to "stacking," the State was required to amend the information to charge Class B felony burglary, which the State did during a short recess. Id. at 4. The State then moved to dismiss the remaining charges at the sentencing hearing. All of that conduct and the colloquy quoted above show that Wampler and the State worked in cooperation in order to allow him to plead guilty to the two Class B felonies of which he was ultimately convicted. Such cooperation is the nature of an agreement. That the same was not memorialized in writing here is of no moment. A bargain was struck for a quid pro quo, the agreement was executed, and Wampler received the benefit of the bargain.

The record shows that Wampler and the State agreed to the convictions for which he would plead guilty, and the State dismissed the remaining charges. As such, Wampler invited the error, if any, when Wampler pleaded guilty to the two Class B felony charges. See Gamble, 831 N.E.2d at 184. Therefore, he waived review of his common law double jeopardy claim. See id.

### Issue Two: Aggravators

Wampler next contends that the trial court abused its discretion when it sentenced him. Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007), clarified on other grounds on reh'g, 875 N.E.2d 218 (Ind. 2007). An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts

and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. Id.

> One way in which a trial court may abuse its discretion is failing to enter a sentencing statement at all. Other examples include entering a sentencing statement that explains reasons for imposing a sentence— including a finding of aggravating and mitigating factors if any—but the record does not support the reasons, or the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or the reasons given are improper as a matter of law. . . .

> [However, b]ecause the trial court no longer has any obligation to "weigh" aggravating and mitigating factors against each other when imposing a sentence, . . . a trial court can not now be said to have abused its discretion in failing to "properly weigh" such factors.

Id. at 490-91.

Wampler first contends that the trial court abused its discretion when it imputed a benefit to him from his guilty plea. Specifically, Wampler argues that, because there was no plea agreement, any benefit from his plea cannot be imputed to him for purposes of sentencing. We cannot agree.

Following argument by counsel, the trial court made a "couple of statements" to Wampler before "get[ting] into mitigating and aggravating circumstances." Id. at 85. In one of those statements the trial court told Wampler he was getting a "good deal" by pleading guilty to two B felonies because the sentence exposure for an A felony was higher. The court also said that it believed Wampler to be "genuine," referring to the evidence he had offered showing his newly found faith and desire to do right. Id. at 86.

But when the trial court subsequently identified the aggravators it would consider, it did not include anything about the guilty plea or any benefit from the same that Wampler enjoyed. In other words, the record does not show that the trial court identified

8

Wampler's guilty plea as an aggravating or mitigating circumstance. As such, Wampler has not shown that the trial court abused its discretion when it mentioned the benefit of his guilty plea at his sentencing hearing.

Wampler next contends that the trial court abused its discretion when it identified as an aggravator his use of a firearm in a prior crime, a charge which had been dismissed. Our supreme court has described when and how a defendant's arrest record may be used in sentencing:

> A long line of cases from this Court holds that allegations of prior criminal activity need not be reduced to conviction before they may be properly considered as aggravating circumstances by a sentencing court. Creasy v. State (1988), Ind., 518 N.E.2d 785 (one pending charge, four arrests); Dillon v. State (1986), Ind., 492 N.E.2d 661 (pending felony charges); McNew v. State (1979), 271 Ind. 214, 391 N.E.2d 607 (long record of arrests). The court must, however, place this type of information in the proper context when considering it and determining its relative weight. A record of arrests cannot be considered as an aggravator under I.C. 35-38-1-7(b)(2) [repealed, similar provision at I.C. 35-38-1-7.1(a)(2)] because it does not reveal to the sentencing court that the defendant has engaged in the kind of behavior which the legislature identified as an aggravator in that subsection. I.C. 35-38-1-7(d) [repealed, similar provision at I.C. 35-38-1-7.1(c)], however, gives a sentencing court the flexibility to consider any factor which reflects on the defendant's character, good or bad, in addition to those expressly set out in the rest of the statute when determining the appropriate sentence to impose on that defendant. It is in this category that a record of arrests is properly considered. While a record of arrests does not establish the historical fact of prior criminal behavior, such a record does reveal to the court that subsequent antisocial behavior on the part of the defendant has not been deterred even after having been subject to the police authority of the State and made aware of its oversight of the activities of its citizens. This information is relevant to the court's assessment of the defendant's character and the risk that he will commit another crime and is therefore properly considered by a court in determining sentence. I.C. 35-38-1-7(a)(1) and (a)(3)(B) [repealed, similar provisions at I.C. 35-38-1-7.1(b)(8), (c)]. See also Willoughby v. State (1990), 552 N.E.2d 462, 471 (DeBruler, J., concurring and dissenting); Chamness v. State (1983), Ind., 447 N.E.2d 1086, 1088 (De[B]ruler, J., concurring in result).

Tunstill v. State, 568 N.E.2d 539, 544-45 (Ind. 1991).

Wampler concedes that he was charged in 2003 with dangerous possession of a firearm, but he argues that that charge should not have been considered in determining his sentence in the present case because the charge had been dismissed. Absent additional evidence to show commission of a crime, Wampler would be correct if his criminal history consisted merely of that charge. But Wampler has an extensive criminal history dating back to a juvenile delinquency adjudication at age twelve. Specifically, he had seven juvenile delinquency adjudications, for crimes such as burglary, theft, criminal mischief, intimidation, and underage drinking. And he had three convictions as an adult, two for burglary and one for misdemeanor battery resulting in bodily injury, with two probation violations and two additional probation violation petitions pending at the time of sentencing in the instant case. Under Tunstill and Indiana Code Section 35-38-1-7.1, the trial court could consider Wampler's arrest for dangerous possession of a firearm when sentencing him as indicative of (1) "subsequent antisocial behavior [that was] not deterred even after having been subject to the police authority of the State and made aware of its oversight of the activities of its citizens[,]" (2) Wampler's character, and (3) the risk that he might commit another crime. Id. at 545.

Moreover, the trial court found several aggravators besides Wampler's prior firearm charge, namely, the harm, loss, or damage suffered by the victim was significantly greater than the elements necessary to prove the offense; the offense was the result of stalking and premeditation; Wampler's test scores showed him to be at an extremely high risk for re-offending; Wampler had previously been given "every possible

sentence alternative. . . since age eleven. And [he] messed them all up[,]" Sentencing Transcript at 88; Wampler's untreated addiction; his criminal history; and the fact that the offense was committed while he was on probation and in-home detention. Viewed together with the other identified aggravators, the trial court did not err in considering Wampler's previously dismissed weapons charge when it sentenced him.

**Issue Three: Appellate Rule 7(B)**

Finally, Wampler contends that his sentence is inappropriate in light of the nature of the offenses and his character. Although a trial court may have acted within its lawful discretion in determining a sentence, Article VII, Sections 4 and 6 of the Indiana Constitution "authorize[] independent appellate review and revision of a sentence imposed by the trial court." Roush v. State, 875 N.E.2d 801, 812 (Ind. Ct. App. 2007) (alteration original). This appellate authority is implemented through Indiana Appellate Rule 7(B). Id. Revision of a sentence under Appellate Rule 7(B) requires the appellant to demonstrate that her sentence is inappropriate in light of the nature of her offense and her character. See Ind. Appellate Rule 7(B); Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We assess the trial court's recognition or non-recognition of aggravators and mitigators as an initial guide to determining whether the sentence imposed was inappropriate. Gibson v. State, 856 N.E.2d 142, 147 (Ind. Ct. App. 2006). However, "a defendant must persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review." Roush, 875 N.E.2d at 812 (alteration original).

Moreover, "sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." Cardwell v. State, 895 N.E.2d 1219, 1222 (Ind. 2008). Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented. See id. at 1224. The principal role of appellate review is to attempt to "leaven the outliers." Id. at 1225. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." Id. at 1224.

Wampler has not shown that his sentence is inappropriate in light of the nature of the offenses. Significantly, Wampler followed the victim to her home, noted its location, and made a plan to return to steal the bank bag money. Even if the offenses did not require much time to commit, as he claims, his stalking and premeditation exacerbate the seriousness of the offenses and go beyond the elements necessary for conviction. Moreover, Wampler put Kaur and her mother-in-law, a visitor from India, in great fear by using a weapon to commit the offenses and by binding them before he left Kaur's home.

Nor has Wampler shown that the sentence is inappropriate in light of his character. Although Wampler had shown an apparently sincere change of heart by the time of sentencing, the facts of the offenses remain. Wampler has a lengthy criminal history, including seven juvenile delinquency adjudications and four adult convictions.[3] Wampler had been offered "every possible sentence alternative . . . since [he was] age eleven[,]" but he had failed at all, had had probation and other sentencing alternatives revoked, and

_____

[3] Wampler's adult convictions arise from charges for three felonies and one misdemeanor, but the record does not show whether he was convicted of those offenses as charged.

had committed the instant offenses while on probation and in-home detention. Moreover, he had committed the offenses to get money for drugs, but his addiction remained untreated. And although Wampler had a very unfortunate childhood with very little or no appropriate parental or family guidance, he had had opportunities through juvenile and adult sentencing to realize the errors of his ways and correct his behavior. He chose not to do so. His remorse at this point, while appropriate and commendable, along with his youth and guilty plea do not outweigh the other aspects of his character. We cannot say that his sentence is inappropriate in light of his character.

Affirmed.

RILEY, J., and DARDEN, J., concur.