## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 31 2016, 9:16 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ernest P. Galos
Public Defender
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Katherine Modesitt Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Matthew Grayson,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

August 31, 2016

Court of Appeals Case No.
71A05-1506-CR-649

Appeal from the St. Joseph
Superior Court

The Honorable Elizabeth C.
Hurley, Judge

Trial Court Cause No.
71D08-1312-FA-30

**Baker, Judge.**

[1] Matthew Grayson appeals his convictions for three counts of Class A felony Child Molesting[1] and one count of Class C felony Vicarious Sexual Gratification.[2] Grayson raises the following arguments: (1) the trial court erred by permitting the child victim's out-of-court statements into evidence pursuant to the protected persons statute; (2) the trial court erred by denying Grayson's motion for a mistrial; and (3) there is insufficient evidence supporting the convictions. Grayson also contends that the sentence imposed by the trial court is inappropriate in light of the nature of the offenses and his character. Finding no error and that the sentence is not inappropriate, we affirm.

## Facts

[2] Grayson and Heather Smith have two children together: M.G., born August 14, 2008, and S.G., born November 12, 2010. Between August 2012 and September 2013, Heather was working at multiple jobs. While she was at work, Grayson cared for the children.

[3] In September 2013, the Department of Child Services removed the children from the home because of issues regarding lack of cleanliness. At that time, the children went to live with their maternal grandmother, Lori Smith. Lori noticed that M.G., who was five years old at that time, was frequently defecating in her pants.

---

[1] Ind. Code § 35-42-4-3.

[2] I.C. § 35-42-4-5.

[4]     On December 17, 2013, M.G. asked Lori if she could sleep with her if she had a nightmare. M.G. explained that it was not really a nightmare but a "sex dream." Tr. p. 262. Lori asked what M.G. meant by "sex dream," and M.G. replied that it was "when two people do that dirty thing." *Id.* Lori asked M.G. what had happened, and M.G. told her that "when mommy goes to work and daddy locks the door and pushes her with his yum yum until she gets to the couch. And then he puts his yum yum on her hoo hoo." *Id.* Lori asked M.G. if it happened once, and M.G. said "no, he does it all the time." *Id.* M.G. told Lori that she had not told anyone "because daddy told her not to because he would go to jail for a long time so she couldn't tell anybody." *Id.* at 263. M.G. also told Lori that Grayson had awakened her one day to watch a "porno" with him and "when he was done she got to go back to bed." *Id.* at 263. When Lori asked M.G. "done with what," M.G. said, "jacking off" and made a motion with her hand. *Id.* at 264.

[5]     The next day, M.G. participated in a forensic interview. During the interview, M.G. identified a penis as a "pee pee," "yum yum," and "dingy," and a vagina as a "hoo hoo" and the buttocks as "butt" or "bootie." State's Ex. 31. M.G. told the interviewer that Grayson had stuck his "yum yum" in her "hoo hoo" and that afterwards, her "hoo hoo" felt "really sored [sic]." *Id.* She also said that Grayson made her take off her skirt and underwear and he put his finger in her "hoo hoo." *Id.* M.G. said that Grayson sometimes used "that blue thing that goes in your hoo hoo that hurts and tickles" and "it looks like a bee," and that he kept the "blue thing" in the "secret bathroom." *Id.* M.G. also told the

interviewer that Grayson put his "yum yum" in her "butt." *Id.* M.G. stated that sometimes Grayson "licks my hoo hoo," demonstrating the action for the interviewer, and discussed how the "white goo" came out of Grayson's "yum yum" and how she swallowed the "yucky goo" when Grayson put his "yum yum" in her mouth. *Id.* Finally, M.G. reported that Grayson made her put S.G.'s "dingy" in her mouth and suck it, explaining that while M.G. was doing this, Grayson's clothes were off and his hands were on his "dingy." *Id.* Throughout the interview, M.G. demonstrated actions with her hands or with her mouth when explaining what Grayson had done to her.

[6] South Bend Police officers obtained and executed a search warrant for Grayson's home and recovered a battery operated power glide razor and the case of a pornographic movie entitled "I Luv Asians 6." Tr. p. 360, 370. The razor was tested for DNA evidence but the examiner was unable to draw any conclusion from the testing. The forensic scientist was only able to determine that "[t]here were enough numbers there to say that it wasn't from a single source or one individual. There were more numbers than you would expect to find." *Id.* at 402.

[7] On December 30, 2014, the State charged Grayson with three counts of class A felony child molesting, one count of class C felony vicarious sexual gratification, and one count of child D felony possession of child pornography.[3]

---

[3] The State later dismissed the possession of child pornography charge.

On November 20, 2014, the State filed a notice of intent to introduce M.G.'s out-of-court statements to Lori and to the forensic interviewer should the trial court find M.G. to be unavailable as a witness. Following a two-day hearing held on December 3 and 4, 2014, in which the State offered M.G. for cross-examination, the trial court found M.G. to be an unavailable witness and ordered that her out-of-court statements would be admissible at trial. The trial court reached this conclusion based on the opinions of a psychologist and several other witnesses, finding that if M.G. were required to testify in Grayson's presence, she would "suffer serious emotional distress such that she would not be able to reasonably communicate." Appellant's App. p. 243.

[8] Grayson's jury trial began on March 13, 2015. At the trial, three of Grayson's fellow inmates testified. Erskine Jones testified that Grayson had told him that he made his children watch pornography and "reenact things together" and that he had "a razor he sodomized [M.G.] with." Tr. p. 476. At some point, Jones and Grayson argued over the fact that Grayson intended to take his case to trial, and Grayson told Jones that "he would f*ck a hole the size of a grapefruit in [Jones's] daughter." *Id.*

[9] Quinton Ferguson testified that Grayson had told him that "he was just having his two kids . . . touch on each other and like lick and suck on each other just so they wouldn't be slow learners like the mom was." *Id.* at 492. Grayson told Ferguson that he penetrated M.G. anally with a razor, that he was not able to "truly" penetrate M.G. because "if it so happened to leave DNA in her it would be easy to find," and that he liked to watch Asian pornography with his son

because he wanted his son to be a 'quick take.'" *Id.* Grayson also told Ferguson that "he tried to penetrate [M.G.], but he said if he forced himself in there it would have been obvious because [M.G.] is such a little girl." Tr. p. 493.

[10] Thomas Hamet testified that Grayson had told him that Grayson "got drunk with his neighbor one night and he went in the child's room while she was asleep and he masturbated over the top of her and ejaculated on her, rubbed it in with the head of his penis and his finger and then performed oral on her." *Id.* at 511. Grayson told Hamet that he touched M.G. while she slept, that he used different objects to touch the child's vagina, and that he had M.G. watch pornography "to show her what he wanted to do to him." *Id.* at 512. Grayson also told Hamet that he penetrated M.G. "with a highlighter, a sexual device called a bullet, a vibrating bullet, a pen, his finger, [and] the head of his penis. He performed oral on her." *Id.* at 513. Additionally, Grayson said that "[h]e had his daughter [M.G.] perform oral on the son." *Id.* Grayson also stated that he penetrated M.G. in "[h]er rear end. I believe that was where he penetrated her more with his penis than just the head was in the rear end." *Id.* Hamet also testified that Grayson said that "[h]e was using different objects to stretch her because he says he is hung like a mule, and he was using different objects on the child. He was using different objects on the child to try and stretch her so he could have full sexual contact with her." *Id.*

[11] During Lori's testimony at the trial, the prosecutor asked Lori if Heather and Grayson had ever lived with her. Lori replied, "I'm not really sure on the dates.

They didn't live with me long. I got a letter from the internet company stating that somebody was stealing stuff from the internet. I found it was [Grayson] and I threw him out." *Id.* at 258. Grayson objected and moved for a mistrial. The trial court sustained the objection and admonished the jury that Lori's answer "cannot be considered by you in any manner in determining guilt or innocence with regard to these charges." *Id.* at 261. The trial court denied the motion for a mistrial.

[12] Following the trial, the jury found Grayson guilty as charged on March 18, 2015. On May 15, 2015, the trial court imposed thirty-year executed sentences on each class A felony child molesting conviction and a four-year executed sentence on the class C felony vicarious sexual gratification conviction, all to be served consecutively, for an aggregate ninety-four-year term. Grayson now appeals.

# Discussion and Decision

## I. M.G.'s Hearsay Statements

[13] Grayson first argues that the trial court erred by admitting M.G.'s hearsay statements to Lori and to the forensic interviewer into evidence. We afford great deference to a trial court's decision to admit or exclude evidence. *Carpenter v. State*, 786 N.E.2d 696, 702 (Ind. 2003). We will reverse only if the trial court's decision is clearly against the logic and effect of the facts and circumstances before it or it misinterprets the law. *Trujillo v. State*, 806 N.E.2d 317, 323 (Ind. Ct. App. 2004).

[14] Generally, hearsay is not admissible unless the Rules of Evidence or other law specifically provide otherwise. Ind. Evidence Rule 802. Our legislature has enacted special procedures for introducing evidence that would otherwise be inadmissible hearsay evidence in cases involving crimes against children. Specifically, Indiana Code section 35-37-4-6, which applies, among other things, to sex crimes involving children, provides that a child under the age of fourteen is a "protected person." This statute makes otherwise inadmissible evidence admissible:

> A statement or videotape that:
>
> (1)   is made by a person who at the time of trial is a protected person;
>
> (2)   concerns an act that is a material element of an offense listed in subsection (a) or (b) that was allegedly committed against the person; and
>
> (3)   is not otherwise admissible in evidence;
>
> is admissible in evidence in a criminal action for an offense listed in subsection (a) or (b) if the requirements of subsection (e) are met.

I.C. § 35-37-4-6(d). The statute goes on to explain the conditions under which the out-of-court statements may become admissible:

> (e)   A statement or videotape described in subsection (d) is admissible in evidence in a criminal action listed in subsection (a) or (b) if, after notice to the defendant of a

hearing and of the defendant's right to be present, all of the following conditions are met:

(1) The court finds, in a hearing:

    (A) conducted outside the presence of the jury; and

    (B) attended by the protected person in person or by using closed circuit television testimony as described in section 8(f) and 8(g) of this chapter;

that the time, content, and circumstances of the statement or videotape provide sufficient indications of reliability.

(2) The protected person:

    (A) testifies at the trial; or

    (B) is found by the court to be unavailable as a witness for one (1) of the following reasons:

        (i) From the testimony of a psychiatrist, physician, or psychologist, and other evidence, if any, the court finds that the protected person's testifying in the physical presence of the defendant will cause the protected person to suffer serious emotional distress such that the protected person cannot reasonably communicate. . . .

***

(f)     If a protected person is unavailable to testify at the trial for a reason listed in subsection (e)(2)(B), a statement or videotape may be admitted in evidence under this section only if the protected person was available for cross-examination:

(1)     at the hearing described in subsection (e)(1); or

(2)     when the statement or videotape was made.

I.C. § 35-37-4-6(e), -6(f).

[15]    In this case, M.G.'s behavioral clinician, her clinical therapist, and the psychologist who evaluated M.G. all testified that M.G.'s participation in the trial would be extremely traumatic for her. The psychologist opined that if M.G. had to testify in her father's physical presence, it would be "highly distressing" and result in "significant emotional distress." Hearing Tr. p. 25-26. The behavioral clinician testified that if M.G. had to testify at trial, she would "feel threatened, intimidated, and highly anxious." *Id.* at 49-50. The clinician noted that M.G. had experienced a regression in behavior, including defecating in her pants multiple times a day, when she began attending trial interviews and "getting ready to be prepped for court." *Id.* at 41-42. M.G.'s clinical therapist also testified that M.G. had begun to demonstrate increased signs of anxiety and stress when talking about preparing for trial, resulting in severe sleep disturbances and defecating in her pants. The therapist had observed M.G.

becoming "very distressed" and sometimes "just shut[ting] down" when discussing her fears of the court process and having to face her father. *Id.* at 82.

[16] In addition to the professionals who testified, M.G. was present at the hearing so that she could be cross-examined by Grayson's attorney. She refused to sit in the witness chair and had to be carried into the courtroom by her therapist. She sat in her therapist's lap, huddled in the fetal position, and tried to hide her face behind her hair. M.G. stated that she understood the difference between a truth and a lie and agreed to tell the truth. Defense counsel began asking questions of M.G., but abandoned the cross-examination because M.G. was not responsive. The trial court later noted, "I have never seen a child in the state that [M.G.] was in at the time of that protected person hearing, and I have been involved in many cases similar to this one with acts alleged that are just as egregious and I have never—I have never seen anything like that." Tr. p. 37.

[17] The trial court heard unanimous testimony of the professionals involved with M.G. that having to testify at trial in her father's presence would cause her to suffer serious emotional distress such that she could not reasonably communicate. The trial court also observed her behavior in court first-hand and echoed the professionals' conclusions based on her behavior. We find that this evidence readily supports the trial court's conclusion that M.G. is a protected person who was unavailable as a witness under Indiana Code section 35-37-4-6 and that, consequently, her out-of-court statements to Lori and to the forensic interviewer were admissible under that statute.

## II. Mistrial

[18] Next, Grayson argues that the trial court should have granted his motion for a mistrial following Lori's testimony that she had kicked him out of her home in the past after she learned that he was stealing Internet service. We afford great deference to a trial court's ruling on a motion for a mistrial. *Mickens v. State*, 742 N.E.2d 927, 929 (Ind. 2001). A mistrial is an "extreme remedy that is warranted only when less severe remedies will not satisfactorily correct the error." *Francis v. State*, 758 N.E.2d 528, 532 (Ind. 2001).

[19] Grayson argues that Lori's testimony constituted an evidentiary harpoon, which occurs when the prosecution places inadmissible evidence before the jury for the deliberate purpose of prejudicing the jury against the defendant. *Evans v. State*, 643 N.E.2d 877, 889-90 (Ind. 1994). To prevail on such a claim, the defendant must show that (1) the prosecution acted deliberately to prejudice the jury, (2) the evidence was inadmissible, and (3) the defendant was placed in a position of grave peril to which he should not have been subjected. *Id.*; *Jewell v. State*, 672 N.E.2d 417, 424 (Ind. Ct. App. 1996).

[20] In this case, there is no evidence whatsoever that the prosecution acted deliberately to prejudice the jury. Furthermore, the trial court sustained Grayson's objection to the testimony and admonished the jurors that they could not consider it in determining Grayson's guilt or innocence. A contemporaneous admonishment is presumed to have cured any error, *Gamble v. State*, 831 N.E.2d 178, 184 (Ind. Ct. App. 2005), and Grayson has given us no

reason to question that presumption in this case. Under these circumstances, we find no error in the trial court's decision to deny the motion for a mistrial.

# III. Sufficiency of the Evidence

Next, Grayson argues that the evidence is insufficient to support his convictions. When reviewing the sufficiency of the evidence supporting a conviction, we will consider only the probative evidence and reasonable inferences supporting the verdict. *Moore v. State*, 27 N.E.3d 749, 754 (Ind. 2015). In conducting our review, we will neither reweigh the evidence nor assess witness credibility. *Id.* We will affirm unless no reasonable factfinder could find the elements of the crime(s) proved beyond a reasonable doubt. *Id.*

In this case, Grayson was convicted of four crimes, and he argues that the evidence is insufficient to support all of them. To convict Grayson of these crimes, the State was required to prove the following beyond a reasonable doubt:

- Grayson was at least twenty-one years old and performed or submitted to sexual intercourse with M.G., who was under the age of fourteen. I.C. § 35-42-4-3.
- Grayson was at least twenty-one years old and performed or submitted to deviate sexual conduct with M.G., who was under the age of fourteen. *Id.* "Deviate sexual conduct" is an act involving a sex organ of one person and the mouth or anus of another person. Ind. Code § 35-31.5-2-94. Here, the State charged two separate acts of deviate sexual conduct: the first alleged an act involving M.G.'s anus and Grayson's sex organ; the second alleged an act involving M.G.'s mouth and Grayson's sex organ.

- Grayson was at least eighteen years old and knowingly or intentionally directed, aided, induced, or caused M.G., who was under the age of fourteen, to touch or fondle herself or S.G., another child under the age of sixteen, with the intent to arouse or satisfy the sexual desires of M.G., S.G., or Grayson. I.C. § 35-42-4-5.

Grayson does not dispute that the ages of all parties have been established beyond a reasonable doubt. But he argues that the evidence is insufficient to support the remaining elements.

[23] Grayson essentially makes two arguments: first, he again contends that M.G.'s out-of-court statements should not have been admitted as evidence. We have already addressed that issue and will not do so again.[4] Second, he argues that the inmates who testified were not credible witnesses. As noted above, we will not assess witness credibility—that is a job for the factfinder, not an appellate court.

[24] The evidence in the record readily supports Grayson's convictions. M.G.'s statements to Lori and to the forensic interviewer, which are recounted in the Facts section herein, were descriptive and graphic and supported all of the charged crimes detailed above. *See Morrison v. State*, 462 N.E.2d 78, 79 (Ind. 1984) (holding that the uncorroborated testimony of a child victim, alone, is sufficient to sustain a conviction for child molesting). In addition to M.G.'s

---

[4] Grayson argues that M.G.'s statements were not subject to cross-examination and consequently should not be permitted to support his convictions. But as noted above, M.G. *was* subject to cross-examination at the protected persons hearing, but she was so non-responsive and non-communicative during questioning that Grayson's attorney abandoned the attempt.

statements, the State presented three witnesses who testified that Grayson had told them, on different occasions, that he had molested M.G. in myriad different ways. This evidence was highly incriminating and corroborated many of M.G.'s statements regarding the abuse.

[25] Based upon M.G.'s statements to Lori and the forensic interviewer and the testimony of Grayson's three fellow inmates, the jury reasonably concluded that Grayson had molested M.G. in multiple ways, including sexual intercourse, anal penetration, and oral sex, and that he had directed M.G. to perform oral sex on her younger brother to satisfy Grayson's sexual desires. In other words, we find the evidence sufficient to support the convictions.

# IV. Sentencing

[26] Finally, Grayson contends that the aggregate sentence imposed by the trial court is inappropriate in light of the nature of the offenses and his character. Indiana Appellate Rule 7(B) provides that this Court may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. We must "conduct [this] review with substantial deference and give 'due consideration' to the trial court's decision—since the 'principal role of [our] review is to attempt to leaven the outliers,' and not to achieve a perceived 'correct' sentence . . . ." *Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014) (quoting *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013)) (internal citations omitted).

Here, Grayson was convicted of three class A felonies and one class C felony. For the class A felonies, Grayson faced a term of twenty to fifty years imprisonment, with an advisory term of thirty years. Ind. Code § 35-50-2-4. Grayson received three thirty-year sentences—the advisory term. For the class C felony conviction, Grayson faced a term of two to eight years imprisonment, with an advisory term of four years. I.C. § 35-50-2-6. Grayson received an advisory sentence of four years. The trial court ordered all sentences to be served consecutively, for an aggregate term of ninety-four years imprisonment.

Turning first to the nature of Grayson's offenses, their abhorrence cannot be overstated. He repeatedly molested his four-year-old daughter over a long period of time, on multiple occasions, in many different ways. He bragged to his fellow inmates that he had sodomized M.G. with a razor and used a wide variety of tools and objects to "stretch" her so that he could experience full sexual contact with her. Tr. p. 476, 492, 513. He forced her to perform oral sex on her two-year-old brother while he watched and masturbated. He also ordered M.G. not to tell anyone because he would "go to jail for a really long time." *Id.* at 263.

Grayson's attorney argues that "[t]he children were not physically harmed and have a high probability of not remembering any of the facts in the long term, especially S.G." Appellant's Br. p. 22. This statement is troubling in so many ways that it is difficult to address. M.G. was unquestionably physically harmed. She was *four years old* and was repeatedly penetrated vaginally and anally with Grayson's fingers and penis, as well as other objects. And to

suggest that because the children were of such young age we should *lower* his sentence is such an appalling argument that we decline to consider it.

[30] Regarding Grayson's character, we acknowledge, as did the trial court, that he has no criminal history. But his behavior with his children is a strong indicator of his character. He violated a position of trust—he was their *father*, their caregiver—to an unimaginable degree. The trial court observed as follows:

> While watching [M.G.'s] statement and the…child[-]like way in which she talked about what happened, the lack of shame that she exhibited, that what that told me was that you made this her daily life, that this was her experience, this is what she knew life to be, that this is what daddies and daughters did and there was nothing wrong with it because that's what daddies do to their daughter and that's the way it came across in her interview, that was the demeanor she exhibited was that that's all she knew. And because she trusted and because she loved you and because you were her father, she accepted it as what was right and what was okay.

Sent. Tr. p. 35-36. Grayson committed acts and caused harm that went far beyond that required to commit the charged offenses. He molested his very young daughter in so many ways, over such a lengthy period of time, that she began defecating in her pants and exhibiting post-traumatic stress disorder, anxiety, and severe sleep disturbances.

[31] In our view, the trial court exhibited admirable restraint in imposing only the advisory terms on Grayson's convictions. We certainly do not find the

aggregate ninety-four-year sentence to be inappropriate in light of the nature of the offenses and Grayson's character.

[32] The judgment of the trial court is affirmed.

Bradford, J., and Altice, J., concur.